UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CASE NO. _____

BLUEFIN LABS INC.,

    Petitioner,

v.

ANTI CAPITAL (UPPER CAYMAN),

and

ANTI CAPITAL ASIA LTD.,

    Respondents.
_____/

## PETITION TO ENJOIN ARBITRATION

    Petitioner, Bluefin Labs Inc. ("Bluefin"), by and through its undersigned counsel, moves the Court for entry of an Order enjoining an arbitration proceeding improperly filed by Respondents, Anti Capital (Upper Cayman) and Anti Capital Asia Ltd. (collectively, "Anti Capital").

## INTRODUCTION

    1.    Despite acknowledging in writing that the only agreement between the parties that contained an arbitration provision had "expired" and was no longer in effect, Respondents initiated a JAMS arbitration proceeding invoking that provision. Bluefin sought dismissal, which the arbitrator denied but advised the issue could be revisited later in the proceedings. When Bluefin again raised the issue, however, the arbitrator refused even to consider it, declining Bluefin's request for leave to file a summary disposition motion despite his earlier statement. No valid, written arbitration provision exists between the parties, and Bluefin, which is not subject to personal jurisdiction in any court in the United States, now finds itself facing the continuing

expense of an arbitration in New York that should never have been filed. As a result, Bluefin seeks this Court's intervention through an Order enjoining the arbitration.

## THE PARTIES

2. Bluefin is citizen of the British Virgin Islands with its principal office located at OMC Chambers, Wickhams Cay 1, Road Town Tortola, British Virgin Islands.

3. Anti Capital (Upper Cayman) is a Cayman Islands business company with its principal office located at Rm. 31, 16F, No. 206, Sec. 1, Keelung Rd., Xinyi Dist., Taipei City 110058, Taiwan (R.O.C.).

4. Anti Capital Asia Ltd. is a Taiwan company with its principal office located at Rm. 31, 16F, No. 206, Sec. 1, Keelung Rd., Xinyi Dist., Taipei City 110058, Taiwan (R.O.C.).

5. Respondents may be served through their United States-based counsel representing them in the arbitration.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 9 U.S.C. § 203 because this action involves an arbitration that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). The arbitration is subject to the Convention because no party to the arbitration is a citizen of the United States. *See* 9 U.S.C. § 202. Both the United Kingdom and the People's Republic of China are signatories to the Convention. (*See* https://www.newyorkconvention.org/contracting-states, last visited February 10, 2026).

2. Venue is proper in this Court because New York is the situs of the arbitration proceeding under the invalid arbitration provision Respondents have invoked.

## FACTS

3. Bluefin operates a decentralized cryptocurrency exchange.

4. Anti Capital engages in the business of trading on crypto platforms to generate interest in the platforms and the forms of crypto available on those platforms.

5. On May 9, 2023, Anti Capital (Upper Cayman) and Bluefin entered into a Loan Agreement in connection with Anti Capital (Upper Cayman)'s trading on the Bluefin exchange. A copy of the Loan Agreement is attached as Exhibit 1.

6. The Loan Agreement contained a governing law and forum selection provision in Section 6.3 stating as follows:

> **6.3 Governing Law and Submission to Jurisdiction**. This Agreement shall be governed by and construed in accordance with the laws of the British Virgin Islands. For the purpose of legal proceedings this Agreement shall be deemed to have been made in the British Virgin Islands and to be performed there and the courts of the British Virgin Islands shall have jurisdiction over all disputes which may arise under this Agreement and the Borrower hereby irrevocably and unconditionally submit to the exclusive jurisdiction of such courts, provided always that nothing herein contained shall prevent the Lender from proceeding at this election against the Borrower in the Courts of any other province, state, country or jurisdiction.

7. On May 18, 2023, Anti Capital Asia Ltd. entered into a Services Agreement with Bluefin. A copy of the Services Agreement is attached as Exhibit 2.

8. The Services Agreement contained an arbitration provision stating Delaware law applies to disputes arising out of the agreement and that the parties are subject to arbitration with JAMS with respect to any such disputes.

9. On May 24, 2024, the parties entered into a Mutual Modification Agreement ("MMA"). The MMA does not contain an arbitration provision or a forum selection provision.

10. The MMA contained the following statements

> WHEREAS, Anti Capital and Customer *are* parties to that certain loan agreement, effective May 9, 2023 (the 'Loan Agreement');

> WHEREAS, Anti Capital Asia and Customer *were* parties to a *services agreement* dated effective May 18, 2023 (the "May 18 Agreement") **which as of the date hereof has expired**;[1]
>
> \*\*\*
>
> 2.3   This Modification and the Loan Agreement set forth the entire agreement and understanding between the parties relating to the subject matter herein and *supersede* all prior or contemporaneous disclosures, discussions, understandings and agreements, whether oral or written, between them.

11.   Thus, the MMA made clear the Services Agreement, including its arbitration provision, had expired and that the MMA and Loan Agreement were the only two documents setting forth the contractual terms between the parties.

12.   Anti Capital engaged in trading on the Bluefin exchange in an effort to earn Blue tokens, a form of crypto.  A dispute arose after the execution of the MMA regarding the number of tokens to which Anti Capital was entitled, as well as the time at which tokens earned by Anti Capital would vest.

13.   Anti Capital subsequently initiated a JAMS arbitration, invoking the expired arbitration provision of the Services Agreement and specifically acknowledging the MMA "is a valid, binding agreement."  *See* Statement of Claims attached as Exhibit 4, ¶ 65.  By affirmatively alleging the MMA is a "valid, binding agreement," Anti Capital necessarily admitted the validity of the terms of the MMA specifying that the Services Agreement expired and was no longer in effect.

14.   According to Anti Capital, Bluefin allegedly breached the Services Agreement by failing to pay "Anti Capital 6,537,439.54 Blue tokens for services rendered between May 2023

---

[1] MMA, first and second "whereas" clauses (emphasis added).

and December 2024."[2]  The Services Agreement, however, does not refer to any obligations relating to Blue tokens; in fact, the Services Agreement does not even mention Blue tokens at all. Instead, as Anti Capital acknowledged in paragraphs 33-34 of the Statement of Claim, the only document addressing Anti Capital's potential right to receive Blue tokens is the MMA.[3]  In other words, the Services Agreement has nothing to do with Anti Capital's claims.

15. Based on the face of the contracts, it is clear that Bluefin did not agree to have disputes concerning Blue tokens resolved through JAMS arbitration. *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 655–56 (Del. Ch. 2012) (quoting *James & Jackson, LLC v. Willie Gary*, LLC, 906 A.2d 76, 78 (Del.2006) ("a party 'cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'")).[4]  Indeed, while Anti Capital has asserted a claim for breach of the Services Agreement in the arbitration in a transparent attempt to avail itself of the expired arbitration provision, the conduct about which Anti Capital complains concerns the other two contracts, which is why Anti Capital also asserted claims for breaches of the Loan Agreement and MMA.  *See id*. (quoting *Parfi Hldg. AB v. Mirror Image Internet, Inc*., 817 A.2d 149, 155 (Del.2002) ("'A court should not compel a party to arbitrate a cause of action independent of the agreement containing the arbitration provision . . . a cause of action is independent if it 'could [have been] brought had the parties not signed' the contract containing the arbitration clause.")).

---

[2] Statement of Claim, ¶¶ 53-54.

[3] MMA, Section 1.1.

[4] For the reasons herein, Bluefin maintains that the laws of the British Virgin Islands govern the substance of Anti-Capitals's claims.  Because the Services Agreement contains a Delaware choice of law provision, however, Delaware law applies to the limited issue of whether the parties agreed to have this dispute arbitrated under JAMS.

16. In addition to a comparison of Anti Capital's claims and the parties' contracts, Bluefin's Terms of Use[5] further demonstrate the parties did not agree to use JAMS arbitration as a means of resolving this dispute. The Terms of Use of Bluefin's platform specifically provide that any disputes regarding BLUE tokens must be resolved through arbitration before the British Virgin Islands International Arbitration Centre ("BVI IAC") (*see* Section 17) and will be governed by the laws of the British Virgin Islands (*see* Section 16). The reason for resolving any such disputes in the British Virgin Islands (consistent with Section 6.3 of the Loan Agreement) is because Bluefin Labs is a British Virgin Islands company, and Bluefin Labs does not make its platform available to citizens of the United States, as provided at the outset of the Terms of Use:

> OUR SERVICES ARE NOT OFFERED TO PERSONS OR ENTITIES WHO RESIDE IN, ARE CITIZENS OF, ARE LOCATED IN, ARE INCORPORATED IN, OR HAVE A REGISTERED OFFICE IN THE UNITED STATES . . .

17. Just as there is no nexus between Anti Capital's claims and the Services Agreement, there is no nexus between Anti Capital's claims and the United States. No court in the United States would have jurisdiction over Bluefin based on the claims Anti Capital is asserting.[6] Instead, any claims relating to Anti Capital's alleged entitlement to Blue tokens concern only the MMA and Loan Agreement, which, in addition to Bluefin's Terms and Conditions, require that such claims be resolved in the British Virgin Islands.

18. Nonetheless, Anti Capital initiated arbitration with JAMS based on the expired arbitration agreement.

---

[5] When Anti Capital agreed to participate on Bluefin's system, Anti Capital also agreed to the Terms and Conditions set forth on Bluefin's website at https://bluefin.io/airdrop-terms-and-conditions. A copy of those Terms and Conditions is attached as Exhibit 5.

[6] Bluefin files this action without consenting to personal jurisdiction in this Court for any other matters. *See*, *e.g.*, *SCPS, LLC v. Law*, 770 F. Supp.3d 11 (D.D.C. 2025) (a party does not consent to personal jurisdiction by filing a motion to enjoin arbitration).

6

19. Bluefin responded by filing a motion to dismiss the arbitration based on the absence of a valid, written arbitration provision.

20. Following the initial briefing and a hearing with the arbitrator, the arbitrator authorized Anti Capital to submit communications between the parties to attempt to support Anti Capital's position that the Services Agreement was still in effect despite the clear statement in the MMA that it had expired.

21. Anti Capital submitted written communications, but none of them contained an arbitration provision.  Bluefin filed a supplemental submission arguing that the communications that predated the execution of the MMA were irrelevant to the issue of whether arbitration was appropriate, as the MMA made clear the Services Agreement had expired and that all prior discussions between the parties, "whether oral or written," were barred by the integration clause in the MMA.  Bluefin also pointed out that the Federal Arbitration Act requires a written agreement to arbitrate, and Anti Capital had produced no evidence of any such post-MMA agreement.

22. The arbitrator struck Bluefin's response, stating it went beyond the scope of the supplemental filings he was permitting.  The arbitrator stated Bluefin's submission "contains no substantive engagement" with the documents Anti Capital submitted, despite that Bluefin specifically addressed those documents by pointing out what they did **not** contain: an arbitration provision.  (*See* Procedural Order No. 2.)

23. The arbitrator then denied Bluefin's motion to dismiss, finding the parties' course of conduct after the MMA was executed may have somehow revived the Services Agreement, but refusing to address the undisputed fact that no written agreement to arbitrate post-dated the MMA. (*See* Procedural Order No. 3.)

24. The arbitrator further held that "Jurisdictional objections, including any challenge to Claimants' standing, are preserved," and that the arbitrator "retains discretion to revisit these matters if the evidentiary record so warrants." (*Id.*, pp. 28-29.)

25. The parties then engaged in discovery. Prior to the denial of Bluefin's motion to dismiss, none of the parties had produced a single document to another party except for documents attached to filings. No written discovery had been served, and no depositions had been taken.

26. During discovery, Anti Capital produced a prior version of the MMA containing a provision that stated "The Parties now wish to modify the Loan Agreement and the [Services] Agreement." Had this document been the version that was signed, Anti Capital would arguably have a basis for its contention that the Services Agreement was revived. But the parties did not sign that version.

27. Instead, the parties signed the MMA attached as Exhibit 3, which unambiguously stated that the Services Agreement "expired" and that the only contracts between the parties were in the Loan Agreement and MMA.

28. Additionally, Anti Capital's designated witness testified Anti Capital had not received any payments under the Services Agreement after the execution of the MMA and had engaged in none of the activities described in the Services Agreement after that time. Instead, the MMA was the governing document, as modified by messages post-dating the MMA. None of those messages referred in any way to arbitration.

29. The scheduling order in the arbitration required the parties to submit letters seeking leave to file summary disposition motions, but the parties were not permitted to submit evidence with their letters. Since the arbitrator had stated he retained "discretion to revisit" the issue of whether there was a valid arbitration provision, Bluefin sent a letter requesting leave to address

the issue through a summary disposition motion, particularly since the record now conclusively demonstrated no valid arbitration provision exists.

30. Anti Capital opposed Bluefin's motion, arguing the arbitrator had issued a lengthy opinion on a "full record," despite that the only evidence in the record at that time were the documents Anti Capital had selected to submit to the arbitrator. Discovery had not yet opened at the time the motion to dismiss was decided, so it was not possible for there to have been a "full record" in any event.

31. The arbitrator, however, adopted Anti Capital's argument, finding he had a "full record" at the time he denied Bluefin's motion to dismiss and that Bluefin had not submitted additional evidence explaining why his decision was incorrect – despite having expressly precluded the parties from submitting evidence with their letters seeking leave to file summary disposition motions.

32. Bluefin now finds itself confronted with months of additional arbitration leading up to a hearing in New York in October. It finds itself in this position notwithstanding that it is undisputed there is no valid arbitration provision and notwithstanding that its Terms and Conditions demonstrate Bluefin has chosen not to interact with the United States with regard to its crypto exchange. Bluefin, therefore, now turns to this Court and requests that the arbitration be enjoined, as there is no basis for it to have been filed or certainly to continue at this point.

## COUNT 1: INJUNCTIVE RELIEF

33. Bluefin reiterates and incorporates by reference the foregoing allegations.

34. Arbitrations are creatures of contract and may only exist where parties expressly agree to arbitrate disputes.

35. The Services Agreement is the only document executed by the parties that contained an arbitration provision.

9

36. As the parties specifically acknowledged through the MMA, the Services Agreement, which necessarily includes its arbitration provision, expired prior to the execution of the MMA.

37. The MMA also made clear that the only agreements between the parties were the MMA itself and the Loan Agreement.

38. After the execution of the MMA, the parties never agreed to or executed an agreement to arbitrate their disputes.

39. In the absence of a written agreement to arbitrate, Anti Capital had no basis for filing the JAMS arbitration.

40. Bluefin preserved its objections to the arbitration by filing a motion to dismiss and, after being advised its jurisdictional objections were preserved, seeking leave to file a summary disposition motion on largely the same grounds.

41. By refusing even to permit Bluefin to file a summary disposition motion, the arbitrator has ensured that the invalid arbitration will continue through a hearing.

42. Bluefin is likely to prevail on the merits of its argument that the JAMS arbitration has no basis in an agreement to arbitrate.

43. Bluefin will be irreparably harmed by being forced to arbitrate in the absence of an agreement to arbitrate.

44. Anti Capital will not suffer a hardship as a result of the Court enjoining the arbitration, as it is improper.

45. The public interest is best served by enforcing the laws, including the Federal Arbitration Act's requirement that parties may only be compelled to arbitrate where they have agreed to do so in writing.

46. Bluefin is entitled to a preliminary and permanent injunction enjoining the arbitration.

WHEREFORE, Petitioner, Bluefin Labs Inc., respectfully requests that the Court enjoin the arbitration described herein, award its attorneys' fees and costs, and grant any other relief the Court deems appropriate.

Dated: February 12, 2026  
New York, New York

Respectfully submitted,

By: /s/ *Sidney S. Liebesman*  
Sidney S. Liebesman  
**FOX ROTHSCHILD LLP**  
101 Park Avenue, 17th Floor  
New York, NY 10178  
Telephone: (302) 622-4272  
Facsimile: (302) 656-8920  
sliebesman@foxrothschild.com  
*Attorney for Movant Bluefin Labs Inc.*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 12, 2026, I served the following document by filing it with the Court via the Court's CM/ECF system.

                                                     */s/ Sidney S. Liebesman*
                                                     Sidney S. Liebesman