# EXHIBIT C

Case 1:26-cv-01190-JMF    Document 14-3    Filed 02/19/26    Page 1 of 9

**LOAN AGREEMENT**

**THIS LOAN AGREEMENT** is made as of May 9, 2023 between Bluefin Labs Inc. (the "**Lender**"), with primary mailing address and contact information as follows: OMC Chambers, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands, Attention: Jonathan Ip, Email: jonathan@firefly.foundation, and Anti Capital (Upper Cayman) (the "**Borrower**"), with primary mailing address and contact information as follows: Anti Capital 16F, No. 206, Section 1, Keelung Rd, Xinyi District, Taipei City, 110, Taiwan, Attention: Powen Perng, Email: powen@anticapital.ai.

WHEREAS the parties have agreed that, upon and subject to the terms and conditions contained herein, the Lender will advance by way of loan to the Borrower, and the Borrower will borrow, the aggregate sum of the Loan (as defined below);

NOW THEREFORE THIS AGREEMENT WITNESSES that, in consideration of the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties hereto, the parties hereto hereby covenant and agree as follows:

**ARTICLE 1**
**INTERPRETATION**

**1.1**     **Definitions.** In this Agreement, unless the context otherwise requires, the following words and phrases shall have the meanings set out below, respectively:

(a)     "**Borrower**" has the meaning ascribed thereto in the recitals;

(b)     "**Business Day**" means a day other than a Saturday, Sunday or public holiday and on which banks are open for business in the British Virgin Islands;

(c)     "**Encumbrances**" has the meaning ascribed thereto in Section 3.1(d);

(d)     "**Event of Default**" has the meaning ascribed thereto in Section 5.1;

(e)     "**Lender**" has the meaning ascribed thereto in the recitals;

(f)     "**Loan**" has the meaning ascribed thereto in Section 2.1;

(g)     "**Loan Documents**" means this Agreement and any other documents to be executed and delivered to the Lender by the Borrower;

(h)     "**Maturity Date**" has the meaning ascribed thereto in Section 2.2(a); and

(i)     "**Outstanding Indebtedness**" means the aggregate amount of the Loan, all accrued and unpaid interest hereunder and any other amounts which may from time to time be owing hereunder or pursuant hereto.

**1.2** **Rules of Construction.** Except as may be otherwise specifically provided in this Agreement and unless the context otherwise requires, in this Agreement:

(a) the terms "Agreement", "this Agreement", "the Agreement", "hereto", "hereof", "herein", "hereby", "hereunder" and similar expressions refer to this Agreement in its entirety and not to any particular provision hereof;

(b) references to an "Article", "Section", "Schedule" or "Exhibit" followed by a number or letter refer to the specified Article or Section of or Schedule or Exhibit to this Agreement;

(c) the division of this Agreement into articles and sections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement;

(d) words importing the singular number only shall include the plural and vice versa and words importing the use of any gender shall include all genders;

(e) the word "including" is deemed to mean "including without limitation";

(f) the terms "party" and "the parties" refer to a party or the parties to this Agreement;

(g) any reference to this Agreement means this Agreement as amended, modified, replaced or supplemented from time to time;

(h) any reference to a statute, regulation or rule shall be construed to be a reference thereto as the same may from time to time be amended, re-enacted or replaced, and any reference to a statute shall include any regulations or rules made thereunder;

(i) all dollar amounts refer to US dollars;

(j) any time period within which a payment is to be made or any other action is to be taken hereunder shall be calculated excluding the day on which the period commences and including the day on which the period ends; and

(k) whenever any payment is required to be made, action is required to be taken or period of time is to expire on a day other than a Business Day, such payment shall be made, action shall be taken or period shall expire on the next following Business Day.

**ARTICLE 2**
**LOAN**

**2.1** **Loan.**

(a) The Lender hereby agrees to advance the sum of US$100,000 (the "**Loan**") on May 15, 2023 or such other date as mutually agreed to by the parties as a loan to the Borrower upon and subject to the terms and conditions contained in this Agreement.

(b) The parties agree that the Loan shall be delivered by the Lender in the form of 100,000 USDC (ERC20) to such digital wallet address designated by the Borrower in writing to the

3

Lender (the "**Borrower Wallet**"). The Borrower acknowledges and agrees that all risk of loss in respect of such payment shall be borne by the Borrower upon confirmation of the transfer of such payment by the Lender to the Borrower Wallet.

**2.2**    **Repayment of Loan; Prepayment**

**(a)**    All Outstanding Indebtedness shall be paid by the Borrower to the Lender on May 15, 2024 (the "**Maturity Date**") in the form of USDC (ERC20) to such digital wallet address as designated by the Lender.

**(b)**    When not in default under this Agreement and prior to the Maturity Date, the Borrower shall be entitled to prepay all or any portion of the Loan outstanding without notice, bonus or penalty.

**2.3**    **Interest.** Prior to the Maturity Date, no interest shall be payable on the Loan. Following the Maturity Date, interest shall be payable on any amount of the Loan outstanding at any time, and from time to time, and any overdue interest, at 18.99% per annum, calculated and compounded monthly.

**ARTICLE 3**
**REPRESENTATIONS AND WARRANTIES**

**3.1**    **Representations and Warranties of the Borrower.** The Borrower hereby represents and warrants to the Lender as follows, and acknowledges and confirms that the Lender is relying on such representations and warranties in connection with the Loan:

**(a)**    the Borrower has the capacity to enter into the Loan Documents and perform the Borrower's obligations thereunder;

**(b)**    The execution and delivery of the Loan Documents and the performance by the Borrower of its obligations thereunder will not result in the violation of any indenture or other agreement, written or oral, to which the Borrower is a party or by which it is bound;

**(c)**    This Agreement and the other Loan Documents have been duly executed and delivered by the Borrower and constitute legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with their respective terms, subject only to any limitation under applicable laws relating to bankruptcy, insolvency, arrangement or creditors' rights generally, and the discretion that a court may exercise in the granting of equitable remedies; and

**(d)**    the property and assets of the Borrower are beneficially owned by it, with good and marketable title thereto, free and clear of any security interests, mortgages, liens, claims, charges or other encumbrances whatsoever (collectively, "**Encumbrances**").

4

## ARTICLE 4
## COVENANTS

**4.1**    **Covenants.** So long as the Loan or any part thereof remains outstanding, the Borrower covenants and agrees with the Lender that the Borrower shall:

**(a)**    pay or cause to be paid all Outstanding Indebtedness falling due hereunder on the dates and in the manner specified herein; and

**(b)**    comply in all material respects with the requirements of all applicable law, and all obligations which, if contravened, could give rise to Encumbrances over any of the Borrower's assets, and all contracts to which it is bound, non-compliance with which would, singly or in the aggregate, have a material adverse effect upon its business or upon the ability of the Borrower to perform its obligations under any Loan Document to which it is a party.

## ARTICLE 5
## EVENTS OF DEFAULT

**5.1**    **Events of Default.** The occurrence of any of the following events shall constitute a default under this Agreement (each, an "**Event of Default**"):

**(a)**    default by the Borrower, in payment of any Outstanding Indebtedness to the Lender when due;

**(b)**    default by the Borrower in the performance or observance of any covenant, condition or obligation contained in any Loan Document to which it is a party;

**(c)**    any representation or warranty of the Borrower contained in this Agreement or any Loan Document proves to have been untrue in any material respect at the time in respect of which it was made;

**(d)**    default by the Borrower in the performance or observance of any covenant, condition or obligation contained in any agreement between the Borrower and any person, where such default gives rise to a right to enforce security against the Borrower and such security is being enforced;

**(e)**    the Borrower takes any action or commences any proceedings or any action or proceeding is taken or commenced by another person or persons against the Borrower in respect of the liquidation or dissolution of the Borrower and same is not contested in good faith by the Borrower;

**(f)**    the Borrower commits or threatens to commit any act of bankruptcy pursuant to or set out under the provisions of any laws of any jurisdiction;

**(g)**    the filing of a petition for a receiving order against the Borrower pursuant to the provisions of any laws of any jurisdiction and the same is not contested in good faith by the Borrower;

DocuSign Envelope ID: 46E78300-4DA1-41D3-8BB5-64332D13FB22

5

(h)     any execution, sequestration or other process of any court or other tribunal becoming enforceable against the Borrower or a distress or analogous action or proceeding being taken, commenced or issued against the Borrower;

(i)      a receiver, receiver and manager, agent liquidator or other similar administrator being appointed in respect of the assets of the Borrower or any part thereof or the taking by a secured party, lien claimant, other encumbrancer, judgment creditor or a person asserting similar rights of possession of the assets of the Borrower or any part thereof and the same is not contested in good faith by the Borrower;

(j)      the Borrower transfers, assigns, sells, leases or otherwise disposes of all or any of its assets or any interest in such assets;

(k)     any material portion of the Borrower's assets is damaged, lost or destroyed; or

(l)      the Lender in good faith believes the prospect of payment of Outstanding Indebtedness or performance of the Borrower's obligations under this Agreement is impaired.

**5.2     Remedies Upon Default.** Upon the occurrence of any Event of Default, the Lender may, in addition to any other rights and remedies available to the Lender:

(a)     declare the amount of the Outstanding Indebtedness to be immediately due and payable; and

(b)     take such actions and commence such proceedings as may be permitted at law or in equity (whether or not provided for herein or in the Loan Documents) at such times and in such manner as the Lender in its sole discretion may consider expedient.

**ARTICLE 6**
**GENERAL PROVISIONS**

**6.1     Reliance and Non-Merger.** All covenants, agreements, representations and warranties of the Borrower made herein or in another Loan Document are material, shall be deemed to have been relied upon by the Lender notwithstanding any investigation heretofore or hereafter made by the Lender or any employee or other representative of the Lender and shall survive the execution and delivery of this Agreement and the other Loan Documents until the Borrower shall have satisfied and paid all of the Outstanding Indebtedness.

**6.2     Notices.** Any notice or other communication to be given hereunder to any of the parties hereto shall be in writing and may be given by delivery, or sent by facsimile or other similar means of electronic communication, or if postal services and deliveries are then operating, mailed by registered mail to such party at such party's address set out on the first page of this Agreement or at such other address as such party may have designated by notice so given to the other parties hereto. Any notice or other communication shall be deemed to have been given, if delivered, on the date of delivery, or if sent by facsimile or other similar means of electronic communication, on the Business Day next following the date

of sending, or if mailed by registered mail as aforesaid, on the third Business Day following the date of the mailing if postal service and deliveries are then operating.

**6.3     Governing Law and Submission to Jurisdiction**. This Agreement shall be governed by and construed in accordance with the laws of the British Virgin Islands. For the purpose of legal proceedings this Agreement shall be deemed to have been made in the British Virgin Islands and to be performed there and the courts of the British Virgin Islands shall have jurisdiction over all disputes which may arise under this Agreement and the Borrower hereby irrevocably and unconditionally submit to the exclusive jurisdiction of such courts, provided always that nothing herein contained shall prevent the Lender from proceeding at this election against the Borrower in the Courts of any other province, state, country or jurisdiction.

**6.4     Time of Essence.** Time shall be of the essence of this Agreement.

**6.5     Severability.** If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, all other provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party hereto.

**6.6     Amendments and Waivers.** No amendment or waiver of any provision of this Agreement shall be binding on any party unless consented to in writing by such party.  No waiver of any provision of this Agreement shall constitute a waiver of any other provision, nor shall any waiver of any provision of this Agreement constitute a continuing waiver unless otherwise expressly provided.

**6.7     Assignment.** No party may assign any of its rights or benefits under this Agreement, or delegate any of its duties or obligations, except with the prior written consent of the other parties. Notwithstanding the foregoing, the Lender may assign and transfer all of its rights, benefits and duties and obligations under this Agreement in their entirety, without the consent of the Borrower, to an affiliate or to a purchaser of all or substantially all of the business of the assignor, whereupon the assignee shall be liable for all of the obligations of the assignor under this Agreement and the assignor shall be released from all such obligations.

**6.8     Successors and Assigns.** This Agreement shall enure to the benefit of and shall be binding on and enforceable by and against the parties and their respective successors or heirs, executors, administrators and other legal personal representatives, and permitted assigns.

**6.9     Further Assurances.**  Whether before or after the happening of an Event of Default, the Borrower shall at its own expense do, make execute or deliver, or cause to be done, made executed or delivered by other persons, all such further acts, documents and things in connection with the Loan and the Loan Documents as the Lender may reasonably require from time to time for the purpose of giving effect to the Loan Documents including, without limitation, for the purpose of facilitating the enforcement of the security granted under the Loan Documents, all immediately upon the request of Lender.

**6.10     Counterparts.** This Agreement may be executed in counterparts, each of which when so executed and delivered shall be deemed to be an original and such counterparts together shall constitute one and the same Agreement.

**6.11     Independent Legal Advice.** The parties acknowledge and agree that prior to executing this Agreement that they have had the opportunity to obtain independent legal advice. By signing this

DocuSign Envelope ID: 46E78300-4DA1-41D3-8BB5-64332D13FB23

7

Agreement, each party confirms that they are satisfied with the independent legal advice they have received or hereby waive their entitlement to same.

*[Remainder of page intentionally left blank. Signature page follows.]*

IN WITNESS WHEREOF the parties hereto have duly executed this Loan Agreement as of the date first written above.

**LENDER:**

**BLUEFIN LABS INC.**

By: _____

Name: Jonathan Ip

Title: Authroized Signatory, for and on behalf of Firefly Foundation

For and on behalf of the Lender.

**BORROWER:**

**ANTI CAPITAL (UPPER CAYMAN)**

By: _____

Name: Powen Perng

Title: Head of Taiwan

For and on behalf of the Borrower.