# EXHIBIT I

**JAMS COMPREHENSIVE ARBITRATION RULES AND PROCEDURES**

**In the Matter of an Arbitration Between**

**ANTI CAPITAL (UPPER CAYMAN) and
ANTI CAPITAL ASIA LTD.,**

     **Claimant(s),**

**and**
                                                  **RESPONDENT'S MOTION
                                                 TO DISMISS**

**BLUEFIN LABS INC.**

     **Respondent.**

### RESPONDENT BLUEFIN LABS INC.'S MOTION TO DISMISS

Respondent, Bluefin Labs, Inc. ("Bluefin"), by counsel and pursuant to Rules 9 and 11 of the JAMS Comprehensive Rules and Procedures ("Rules"), hereby objects to and moves to dismiss the Arbitration Demand and Statement of Claim filed by Claimants, Anti Capital (Upper Cayman) ("Anti Capital Upper Cayman") and Anti Capital Asia Ltd. ("Anti Capital Asia") (collectively, "Anti Capital").

### INTRODUCTION

The claims asserted against Bluefin lack any merit whatsoever, particularly in light of Anti Capital's questionable (at best) trading practices and facts omitted from the Statement of Claim. These issues, however, will be resolved at a later time in a different forum. The only issue the Arbitrator needs to resolve at this point is whether JAMS has jurisdiction over Bluefin in the first place. Based on the nature of Anti Capital's claims and the clear language of the contracts in issue, the answer to this question is a resounding "no."

A review of the agreements attached to the Statement of Claim demonstrates there is no colorable basis for the filing in this forum. The only agreement containing a JAMS arbitration

1

provision is the May 18, 2023 Services Agreement ("Services Agreement").  As explicitly stated in the parties' May 24, 2024 Mutual Modification Agreement ("MMA"), however: (1) the Services Agreement expired; and (2) the only agreements between the parties are the MMA and a May 9, 2023 Loan Agreement.  In other words, the contract upon which Anti Capital relies for filing this arbitration was not only terminated, but the parties also expressly disclaimed that it continued to govern their relationship.

Even if the Services Agreement had not been terminated, it would nonetheless be inapplicable to Anti Capital's claims.  The crux of the Statement of Claim is that Bluefin allegedly committed contractual breaches and other tortious acts by failing to provide Anti Capital with 6,537,439.54 "Blue" tokens.  The Services Agreement, however, does not contain a single provision addressing this issue.  Instead, the only contract even mentioning Blue tokens is the MMA – the same document through which the parties acknowledged the termination of the Services Agreement.

As the sole agreement providing for JAMS arbitration has expired, and as the asserted claims are not based on that agreement in any event, there is no basis for maintaining this arbitration.  In light of this straightforward jurisdictional issue, the filing of the Statement of Claim can only be for the purpose of harassing Bluefin and causing it to incur unnecessary costs to respond to an action filed in an inappropriate forum.  Accordingly, the Arbitrator should dismiss the Statement of Claim and award Bluefin its costs and attorneys' fees for being required to respond to it.

## **BACKGROUND**

As part of the arrangement between Bluefin and Anti Capital, the parties executed a series of contracts: (1) the Loan Agreement; (2) the Services Agreement; and (3) the MMA.  Although these contracts contain numerous provisions relevant to the dispute between the parties, only some

2

of these provisions are pertinent to the issues raised through this motion.  As discussed herein, a plain reading of these provisions – the terms of which are not in dispute – make clear there is no basis for this arbitration.

## I.  THE LOAN AGREEMENT

On May 9, 2023, Anti Capital Upper Cayman entered into the Loan Agreement with Bluefin.[1]  The Loan Agreement makes no mention of Blue tokens and provides:

> **6.3 Governing Law and Submission to Jurisdiction**. This Agreement shall be governed by and construed in accordance with the laws of the British Virgin Islands. For the purpose of legal proceedings this Agreement shall be deemed to have been made in the British Virgin Islands and to be performed there and the courts of the British Virgin Islands shall have jurisdiction over all disputes which may arise under this Agreement and the Borrower hereby irrevocably and unconditionally submit to the exclusive jurisdiction of such courts, provided always that nothing herein contained shall prevent the Lender from proceeding at this election against the Borrower in the Courts of any other province, state, country or jurisdiction.[2]

Anti Capital Asia is not a party to this contract.[3]

## II.  THE SERVICES AGREEMENT

On May 18, 2023, Anti Capital Asia entered into the Services Agreement with Bluefin.[4] Like the Loan Agreement, the Services Agreement makes no mention of Blue tokens and provides that it "will commence on the Effective Date and will continue for ninety (90) days, following which time it will terminate ('Termination Date')."[5]   Anti Capital Upper Cayman is not a party to this contract.[6]

---

[1] The Loan Agreement is attached to the Statement of Claim as Exhibit B.
[2] Loan Agreement, Section 6.3.
[3] Loan Agreement, signature page and definition of "Borrower."
[4] The Services Agreement is attached to the Statement of Claim as Exhibit A.
[5] Services Agreement, Section 3.
[6] Services Agreement, signature page and definition of "Customer."

3

### III.      THE MMA

On May 24, 2024, the Loan Agreement was modified through the MMA executed by Bluefin, Anti Capital Asia, and Anti Capital Upper Cayman.[7]  The MMA makes clear that Anti Capital Upper Cayman was not a party to the Services Agreement, that the Services Agreement has expired, and that the Loan Agreement and MMA are the only remaining contracts between the parties:

> WHEREAS, Anti Capital and Customer *are* parties to that certain loan agreement, effective May 9, 2023 (the 'Loan Agreement');
>
> WHEREAS, Anti Capital Asia and Customer *were* parties to a *services agreement* dated effective May 18, 2023 (the "May 18 Agreement") *which as of the date hereof has expired*;[8]
>
> ***
> 2.3     This Modification and the Loan Agreement set forth the entire agreement and understanding between the parties relating to the subject matter herein and *supersede* all prior or contemporaneous disclosures, discussions, understandings and agreements, whether oral or written, between them.[9]

The MMA does not contain a choice of law or forum selection clause.  As it was clearly intended as a modification of the Loan Agreement, while making clear the Services Agreement was no longer in effect, it necessarily follows that any disputes relating to the MMA are subject to Section 6.3 of the Loan Agreement.  The MMA is the *only* contract mentioning Blue tokens at all.[10]

---

[7] The MMA is attached to the Statement of Claim as Exhibit C.
[8] MMA, first and second "whereas" clauses (emphasis added).
[9] MMA, Section 2.3 (emphasis added).
[10] MMA, Section 1.

**ARGUMENT**

**IV.     THE SERVICES AGREEMENT EXPIRED AND DOES NOT GOVERN THE PARTIES' RELATIONSHIP.**

The only provision referring to JAMS arbitration is contained in the Services Agreement. Anti Capital, however, acknowledged through the MMA that the Services Agreement expired and that the Loan Agreement and MMA are the only agreements between the parties.  In fact, Anti Capital specifically alleges the MMA "is a valid, binding agreement" in paragraph 65 of the Statement of Claims, and Bluefin does not dispute that allegation.  Based on Anti Capital's undisputed allegation that the MMA is valid and binding, the only conclusion that may be reached regarding the Services Agreement is that it (including its arbitration provision) expired, just as the MMA says it did, with the MMA and the Loan Agreement being the only two documents applicable to the relationship between the parties.  Because neither of those agreements contains a provision requiring the arbitration of claims with JAMS, there is no basis for permitting Anti Capital's claims to proceed in this forum.  This is particularly true where the parties agreed to a different forum through the Loan Agreement, which Anti Capital likewise alleges "is a valid, binding agreement" (*see* Statement of Claims, ¶ 58) pursuant to which it is asserting claims.

**V.      ANTI CAPITAL'S CLAIMS DO NOT ARISE FROM THE SERVICES AGREEMENT.**

According to Anti Capital, Bluefin allegedly breached the Services Agreement by failing to pay "Anti Capital 6,537,439.54 Blue tokens for services rendered between May 2023 and December 2024."[11]  The Services Agreement, however, does not refer to any obligations relating to Blue tokens; in fact, the Services Agreement does not even mention Blue tokens at all.  Instead,

---

[11] Statement of Claim, ¶¶ 53-54.

as acknowledged in paragraphs 33-34 of the Statement of Claim, the only document addressing Anti Capital's potential right to receive Blue tokens is the MMA.[12]  In other words, the Services Agreement has nothing to do with Anti Capital's claims.

The correctness of this argument is illustrated by Anti Capital's own allegations.  In paragraph 45 of the Statement of Claims, Anti Capital chastises Bluefin for prior correspondence referring to Anti Capital missing key performance indicators (KPIs), pointing out that none of the contracts refer to KPIs.  Yet, Anti Capital is proceeding in the same manner about which it previously complained, filing claims in an effort to recover Blue tokens by invoking the arbitration provision of a contract that nowhere refers to such tokens.  (*See* Statement of Claims, ¶ 53.)

Based on the face of the contracts, it is clear that Bluefin did not agree to have disputes concerning Blue tokens resolved through JAMS arbitration.  *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 655–56 (Del. Ch. 2012) (quoting *James & Jackson, LLC v. Willie Gary*, LLC, 906 A.2d 76, 78 (Del.2006) ("a party 'cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'")).[13]  Indeed, while Anti Capital has inserted a claim for breach of the Services Agreement into this case in a transparent attempt to avail itself of the expired arbitration provision, the conduct about which Anti Capital complains concerns the other two contracts, which, as discussed below, is why Anti Capital has also asserted claims for breaches of the Loan Agreement and MMA.  *See id.* (quoting *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del.2002) ("'A court should not compel a party to arbitrate a cause of action independent of the agreement containing the arbitration provision . . . a cause of action is independent if it

---

[12] MMA, Section 1.1.

[13] For the reasons herein, Bluefin maintains that the laws of the British Virgin Islands govern the substance of Anti-Capitals's claims.  Because the Services Agreement contains a Delaware choice of law provision, however, Delaware law applies to the limited issue of whether the parties agreed to have this dispute arbitrated under JAMS.

6

'could [have been] brought had the parties not signed' the contract containing the arbitration clause.")).

In addition to a comparison of Anti Capital's claims and the parties' contracts, Bluefin's Terms of Use[14] further demonstrate the parties did not agree to use JAMS arbitration as a means of resolving this dispute. The Terms of Use of Bluefin's platform specifically provide that any disputes regarding Blue tokens must be resolved through arbitration before the British Virgin Islands International Arbitration Centre ("BVI IAC") (*see* Section 17) and will be governed by the laws of the British Virgin Islands (*see* Section 16). The reason for resolving any such disputes in the British Virgin Islands (consistent with Section 6.3 of the Loan Agreement) is because Bluefin Labs is a British Virgin Islands company, and Bluefin Labs does not make its platform available to citizens of the United States, as provided at the outset of the Terms of Use:

> OUR SERVICES ARE NOT OFFERED TO PERSONS OR ENTITIES WHO RESIDE IN, ARE CITIZENS OF, ARE LOCATED IN, ARE INCORPORATED IN, OR HAVE A REGISTERED OFFICE IN THE UNITED STATES . . .

Just as there is no nexus between Anti Capital's claims and the Services Agreement, there is no nexus between Anti Capital's claims and the United States. No court in the United States would have jurisdiction over Bluefin based on the claims Anti Capital is asserting. Instead, any claims relating to Anti Capital's alleged entitlement to Blue tokens concern only the MMA and Loan Agreement, which, in addition to Bluefin's Terms and Conditions, require that such claims be resolved in the British Virgin Islands. For these reasons, Anti Capital does not have a proper basis for initiating a JAMS arbitration in the United States, and this case should be dismissed as a result.

---

[14] When Anti Capital agreed to participate on Bluefin's system, Anti Capital also agreed to the Terms and Conditions set forth on Bluefin's website at https://bluefin.io/airdrop-terms-and-conditions. A copy of those Terms and Conditions is attached as Exhibit A.

## VI.    BLUEFIN DID NOT AGREE TO JAMS ARBITRATION CONCERNING ANY CLAIMS BY ANTI CAPITAL UPPER CAYMAN OR ANY CLAIMS RELATING TO THE LOAN AGREEMENT OR MMA.

Recognizing that the Services Agreement does not encompass their causes of action, Anti Capital has also asserted claims for breach of the Loan Agreement and MMA.  Section 6.3 of the Loan Agreement, however, contains a forum selection provision requiring any disputes to be resolved through the courts of the British Virgin Islands.[15]  And, while the MMA does not contain a forum selection clause, the MMA clearly states that "[u]nless specifically addressed herein, no other provisions of the Loan Agreement are intended to be modified hereby,"[16] indicating that disputes relating to the MMA must be resolved in the forum identified in the Loan Agreement. Accordingly, even if the claim for breach of the Services Agreement could somehow remain in this forum (and it cannot for the reasons explained above), Anti Capital's claims relating to the MMA and Loan Agreement must nonetheless be dismissed.

Similarly, it is undisputed that the expired, inapplicable Services Agreement is only between Bluefin and Anti Capital Asia.  Thus, in the event the Arbitrator determines JAMS has jurisdiction over any part of this dispute – notwithstanding the unambiguous contractual language demonstrating otherwise – then the Arbitrator must still dismiss the claims that have been asserted by Anti Capital Upper Cayman.

## VII.    THE ARBITRATOR SHOULD AWARD BLUEFIN ITS FEES AND COSTS ASSOCIATED WITH THIS ARBITRATION.

The impropriety of filing an arbitration demand pursuant to an expired and superseded arbitration provision was previously explained through a letter Bluefins' counsel provided to Anti Capital's counsel.[17]  Notwithstanding the obvious jurisdictional flaws with proceeding in this

---

[15] Loan Agreement, Section 6.3.
[16] MMA, third "whereas" clause.
[17] A copy of the letter is attached as Exhibit B.

forum, together with the availability of a proper forum to which the parties have actually agreed, Anti Capital nonetheless chose to file the Statement of Claims. Bluefin should not have been required to proceed with the process for selecting the Arbitrator and filing this motion in the absence of a legitimate basis for invoking the expired arbitration provision. Accordingly, Bluefin respectfully requests that it be awarded its fees and costs incurred in connection with this arbitration.

## CONCLUSION

To be clear, Anti Capital has only itself to blame for the conduct about which it now complains, and Bluefin reserves the right to advance its defenses and assert claims of its own should the need arise. Based on the clear terms of the contracts in issue, however, the Arbitrator can and should determine at the outset – without needing to consider additional evidence or legal arguments – that JAMS does not have jurisdiction over Bluefin. The Arbitrator, therefore, should dismiss the claims asserted against Bluefin and enter an award of fees and costs associated with the unnecessary work performed in connection with this arbitration and the Statement of Claim.

Respectfully submitted,

/s/  *Brian M. Johnson*
Brian M. Johnson
Logan J. Mayfield
DICKINSON WRIGHT PLLC
300 West Vine Street, Suite 1700
Lexington, Kentucky 40507
Telephone: (859) 899-8704
Facsimile:  (844) 670-6009
bjohnson@dickinsonwright.com
lmayfield@dickinsonwright.com
COUNSEL FOR RESPONDENT,
BLUEFIN LABS INC.

9

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 21st day of April, 2025, the foregoing was served on the following via e-mail:

Stephen D. Palley, Esq.
Brown Rudnick, LLP
601 13th Street NW, #600
Washington, DC 20005
spalley@brownrudnick.com

Hayden A. Miller, Esq.
Brown Rudnick, LLP
7 Times Square
New York, NY 10036
hmiller@brownrudnick.com

COUNSEL FOR CLAIMANTS,
ANTI CAPITAL (UPPER CAYMAN)
AND ANTI CAPITAL ASIA, LTD.


*/s/ Brian M. Johnson*
COUNSEL FOR RESPONDENT,
BLUEFIN LABS INC.

4935-6687-2884 v1 [113761-1]

10

# EXHIBIT A





# BLUE TOKEN AIRDROP TERMS AND CONDITIONS

Last updated on December 9, 2024

PLEASE READ THESE AIRDROP TERMS (AS DEFINED BELOW) CAREFULLY. THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND BLUEFIN (AS DEFINED BELOW) AND GOVERN YOUR PARTICIPATION IN THE AIRDROP (AS DEFINED BELOW), INCLUDING WITH RESPECT TO YOUR RECEIPT OF ANY TOKENS IN CONNECTION WITH THE AIRDROP. BY ACCESSING, USING, OR OTHERWISE PARTICIPATING IN THE AIRDROP YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD, AND AGREED TO THESE AIRDROP TERMS IN THEIR ENTIRETY. YOU ARE RESPONSIBLE FOR MAKING YOUR OWN DECISION IN RESPECT OF YOUR PARTICIPATION IN THE AIRDROP AND ANY RECEIPT OF TOKENS. ANY PARTICIPATION IN THE AIRDROP IS SOLELY AT YOUR OWN RISK AND IT IS YOUR SOLE RESPONSIBILITY TO SEEK APPROPRIATE PROFESSIONAL, LEGAL, FINANCIAL, TAX, AND OTHER ADVICE IN RESPECT OF THE AIRDROP AND ANY RECEIPT OF THE TOKENS PRIOR TO PARTICIPATING IN THE AIRDROP AND PRIOR TO RECEIVING ANY TOKENS.

BY PARTICIPATING IN THE AIRDROP, YOU EXPRESSLY ACKNOWLEDGE AND ASSUME ALL RISKS RELATED THERETO, INCLUDING (WITHOUT LIMITATION) THE RISKS SET OUT BELOW. IN NO EVENT SHALL BLUEFIN OR ANY OF THEIR AFFILIATES OR THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, PARTNERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS, ADVISORS, LAWYERS, ACCOUNTANTS, SUPPLIERS, LICENSORS, AGENTS AND OTHER REPRESENTATIVES (COLLECTIVELY, "BLUEFIN PARTIES") BE HELD LIABLE IN CONNECTION WITH OR FOR ANY CLAIMS, LOSSES, DAMAGES, OR OTHER LIABILITIES, WHETHER IN CONTRACT, TORT, OR OTHERWISE, ARISING OUT OF OR IN CONNECTION WITH THE AIRDROP OR THE RECEIPT OF ANY TOKENS.

BLUEFIN DOES NOT TAKE ANY RESPONSIBILITY FOR THE PARTICIPATION BY ANY PARTICIPANT IN THE AIRDROP. BLUEFIN DOES NOT PROVIDE ANY LEGAL, TAX, OR OTHER ADVICE OR RECOMMENDATION OR ADVICE IN RESPECT OF THE AIRDROP OR THE TOKENS. EACH PARTICIPANT PARTICIPATES IN THE AIRDROP AT ITS OWN RISK AND RECEIVES TOKENS AT ITS OWN RISK.

## 1. INTRODUCTION

(a) These Token Airdrop Terms and Conditions (**"Airdrop Terms"**) govern the participation in and receipt of BLUE tokens (**"Tokens"**) through the airdrop program (**"Airdrop"**) organized by Bluefin Digital Labs Inc., and its parents, subsidiaries and/or affiliates (collectively, "**Bluefin**", "**we**", "**us**" and "**our**"). By participating in the Airdrop, you ("**you**", "**your**" or "**Participant**") agree to be bound by these Airdrop Terms. These Airdrop Terms are supplemental to, and incorporate by reference, our Terms of Use available at https://bluefin.io/terms-of-use ("**General Terms**"). Capitalized terms used but not defined herein have the meaning set forth in the General Terms. The Airdrop, and your participation in the Airdrop, is a Service as defined under the General Terms.

(b) These Airdrop Terms govern your ability to use our Services to participate in the Airdrop. Please read these Airdrop Terms carefully, as they include important information about your legal rights. Please also read the

participate in the Airdrop.

(c) SECTION 17 OF THE GENERAL TERMS CONTAINS AN ARBITRATION CLAUSE AND CLASS ACTION WAIVER. PLEASE REVIEW SUCH CLAUSES CAREFULLY BECAUSE THEY AFFECT YOUR RIGHTS. BY AGREEING TO THESE AIRDROP TERMS, YOU AGREE TO RESOLVE ALL DISPUTES RELATED TO THE AIRDROP THROUGH BINDING INDIVIDUAL ARBITRATION AND TO WAIVE YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS, CLASS ARBITRATIONS, OR REPRESENTATIVE ACTIONS, AS SET FORTH IN THE GENERAL TERMS.

(d) You represent and warrant that all information provided during the Airdrop process is true, accurate, and complete.

(e) You agree that (i) you are solely responsible and liable for all taxes due in connection with your participation in the Airdrop; and (ii) you should consult a tax advisor with respect to the tax treatment of the Tokens received from the Airdrop in your jurisdiction.

(f) You agree that you are responsible for complying with all applicable laws of the jurisdiction in which you reside or in which you are participating in the Airdrop and claiming Tokens thereunder.

(g) You agree that you are not (i) a person or entity who resides in, is a citizen of, is located in, is incorporated in, or have a registered office in the United States or Canada or any Prohibited Jurisdiction (as defined below) (any such person or entity being a "**Prohibited Person**"); (ii) directly or indirectly acting on behalf of a Prohibited Person; or (iii) located in or accessing the Services from a Prohibited Jurisdiction.

(h) You agree that you will not use a virtual private network ("**VPN**") or similar tool to circumvent any geo-blocking and/or other restrictions that we have implemented in connection with the Airdrop. Any such deliberate circumvention, or attempted circumvention, of our controls may permanently disqualify you from participation in the Airdrop, as determined in our discretion.

(i) You agree and acknowledge that your participation in the Airdrop does not violate any applicable laws, including without limitation applicable economic and trade sanctions and export control laws and regulations, such as those administered and enforced by the European Union, the Office of Financial Sanctions Implementation (OFSI), the Office of Foreign Assets Control (OFAC), the U.S. Department of State, the U.S. Department of Commerce, the UN Security Council and other relevant authorities.

(j) You agree that Bluefin reserves the right to require additional information from you and to enter, use, or share such information into or with a Screening Service Provider (as defined below), and its systems, tools, or functionalities, as Bluefin deems appropriate in its sole discretion, including to reduce the risks of money laundering, terrorist financing, sanctions violations, or other potentially illicit activity, or as otherwise necessary to address laws and regulations that may be relevant to the Airdrop or the Tokens. You agree to provide complete and accurate information in response to any such requests. You agree and acknowledge that Bluefin is not responsible and cannot be held liable for any losses, expenses, or delays resulting from inaccurate or incomplete information, and you agree to assume full responsibility for all risks associated therewith.

(k) You agree that your participation in the Airdrop and claim of Tokens thereunder does not require or involve any form of purchase, payment, or tangible consideration from or to us, nor otherwise require or involve any acceptance of value by us from you. You agree and acknowledge that you (i) lawfully may receive Tokens for free via the Airdrop (other than gas fees or applicable taxes, if any), (ii) were not promised the Tokens or any other digital assets (whether via the Airdrop or otherwise); and (iii) took no action in anticipation of, or in reliance on, receiving the Tokens or any other digital assets, the occurrence of an airdrop, or potential participation in any airdrop.

discretion (the "**Airdrop Period**"). You must follow the instructions set forth in any Airdrop announcement and/or such other instructions as may be provided by Bluefin from time to time to participate in the Airdrop. The number of Tokens allocated to each Participant will be determined by Bluefin, in its sole discretion, and such allocation may vary among Participants.

(m) You agree and acknowledge that you are not entitled to receive any Tokens under the Airdrop and/or to participate in the Airdrop based on any documentation, commentary, calculators, metrics, and/or points systems published or otherwise made known by third parties monitoring activities on the Bluefin Protocol (the "**Protocol**") or any of its smart contracts or providing third-party applications or services relating thereto ("**Third-Party Publications and Services**"). You have no claim to Tokens based on such Third-Party Publications and Services. Bluefin does not review, control, monitor, or confirm the accuracy of information that may be provided through Third-Party Publications or Services. You agree and acknowledge that you have not engaged, and will not engage, in any activities designed to obtain Tokens under the Airdrop, including on the basis of, or in reliance on, Third-Party Publications and Services.

(n) You agree that you are the legal owner of the digital asset, smart contract, or protocol address ("**Airdrop Address**") that you use to access or participate in the Airdrop and the Services and will not sell, assign, or transfer control of such address or the Tokens to third parties to circumvent any Token lock-up period or to knowingly redistribute Tokens to a person, internet protocol address ("**IP Address**"), or Airdrop Address that would violate these Airdrop Terms if claimed directly by such person, IP Address, or Airdrop Address.

(o) To participate in the Airdrop, you will need to enter an eligible Airdrop Address and/or connect a compatible third-party digital wallet (either, a "**Wallet**"). Failure to provide and connect an eligible Wallet may result in the forfeiture of Tokens. There may be technical limitations, delays, and/or transaction fees due or payable to third parties, such as gas fees on Protocol transactions, to receive and/or claim Tokens through your Wallet.

(p) By using a Wallet, you agree that you are using the Wallet in accordance with any terms and conditions of an applicable third-party provider of such Wallet. Wallets are not maintained or supported by, or associated or affiliated with, Bluefin. When you interact with the Airdrop or other Services, you acknowledge and agree that you retain control over your digital assets at all times. We do not control digital assets, including the Tokens, in your Wallet, and we accept no responsibility or liability to you in connection with your use of a Wallet. We make no representations or warranties regarding how the Airdrop or other Services will operate with, or be compatible with, any specific Wallet. The private keys necessary to access and/or transfer the digital assets held in a Wallet are not known or held by Bluefin. Any third party that may gain access to your login credentials, private keys, or third-party cloud or storage mechanisms for such information may be able to misappropriate Tokens and/or other digital assets held by you. Bluefin has no ability to help you access or recover your private key and/or seed phrase for your Wallet. You agree that you are solely responsible for maintaining the confidentiality of your private key, and you are solely responsible for any transaction signed with your private key. Bluefin is not responsible for any loss associated with your private keys, digital wallets, vaults or other storage mechanisms.

(q) **You agree that if you are unable to claim Tokens from the Airdrop due to technical bugs, smart contract issues, gas fees, wallet incompatibilities, loss of access to a wallet or the key thereto, or for any other reason, you will have no recourse or claim against Bluefin or any Bluefin Party. In any such cases, neither Bluefin nor any Bluefin Party will bear any liability.**

(r) You agree that claiming Tokens under the Airdrop may require interaction with, reliance on, or an integration with third-party products or services (e.g., a wallet or a network or blockchain) that we do not control. In the event that you are unable to access such products, services, or integrations, or if they fail for any reason, and you are unable to participate in the Airdrop or claim Tokens thereunder as a result, you will have no recourse or claim against us or any Bluefin Party and neither we nor any Bluefin Party bear any responsibility or liability to you.

(s) You agree that your participation in the Airdrop is at your own risk.

(u) Without limiting any terms in the General Terms, you agree that you shall defend, indemnify, and hold the Bluefin Parties harmless from and against any and all claims, actions, proceedings, investigations, demands, suits, costs, damages, losses, liabilities and expenses (including legal fees and costs, fines or penalties imposed by any regulatory authority) incurred by the Bluefin Parties arising out of, in connection with or related to: (i) your use of, or conduct in connection with, the Airdrop; (ii) your breach or our enforcement of these Airdrop Terms, or (iii) your violation of any applicable law, regulation, or rights of any third party. If you are obligated to indemnify any Bluefin Party hereunder, then you agree that Bluefin (or, at its discretion, the applicable Bluefin Parties) will have the right, in its sole discretion, to control any action or proceeding and to determine whether Bluefin wishes to settle, and if so, on what terms, and you agree to fully cooperate with Bluefin in the defense or settlement of such claim. Your obligations under this indemnification provision will continue even after these Airdrop Terms have expired or been terminated.

## 2. ELIGIBILITY

(a) Bluefin, in its sole discretion, shall determine the eligibility criteria for participation in the Airdrop, including the number of Tokens to be distributed to eligible Participants that satisfy certain criteria. Different eligible Participants may receive different amounts of Tokens in the Airdrop, depending on the criteria set forth by Bluefin for the Airdrop. Bluefin shall have no obligation to notify actual or potential Airdrop participants of the eligibility criteria for the Airdrop prior to, during, or after the claims are opened for the Airdrop.

(b) Bluefin reserves the sole and absolute right to disqualify any Participant or potential Participant it deems ineligible for the Airdrop (be it under these Airdrop Terms, by having determined that Participant engaged in any conduct that Bluefin considers harmful, unlawful, inappropriate, or unacceptable or for any other reason). Such disqualification may be appropriate if Bluefin determines, in its sole discretion, for example, that Participant may have used multiple addresses to obscure its identity or location or to attempt to game, cheat, or hack the Airdrop, Tokens or the Protocol.

(c) Participant represents and warrants that Participant is at least 18 years of age or is of legal age to form a binding contract under applicable laws and has full legal capacity and authority to bind and agree to the Airdrop Terms. If Participant is acting as an employee or agent of a legal entity and enters into the Airdrop Terms on behalf of such entity, Participant represents and warrants that Participant has all necessary rights and authorizations to do so.

(d) Bluefin has implemented a risk-based program applicable to the Airdrop and any related participation or claims through its website, https://trade.bluefin.io/, and any subdomains ("**Bluefin Claims**"). This program screens Bluefin Claims using data and tools provided by an independent blockchain analytics provider ("**Screening Service Provider**") and applies screening criteria that may extend beyond the requirements of applicable law. Bluefin Claims also are subject to geo-location and proxy detection controls to prevent access to our website by users that may be Prohibited Persons or located in a Prohibited Jurisdiction. Bluefin reserves the right to take such additional steps as it deems necessary or appropriate, in its sole discretion, to verify the identity and eligibility of any person.

(e) Bluefin may deny, in its sole discretion, any person, IP Address and/or Airdrop Address, access to the Services or the Airdrop based on data from the Screening Service Provider when such data indicates such person, IP Address, or Airdrop Address may present heightened risks based on Bluefin's risk assessment framework ("**Risk Assessment Framework**").

(f) By using the Services and participating in any Airdrop:

(i) You agree that your Airdrop Address will be screened and excluded from an Airdrop, at our sole discretion, if we detect threshold transactions between your Airdrop Address and another digital-asset,

(ii) You agree and acknowledge that your IP Address will be screened and excluded from an Airdrop if our geo-location controls detect that you may be located in (A) Antigua and Barbuda, Algeria, Bangladesh, Bolivia, Belarus, Burundi, Bruma (Myanmar), Cote D'Ivoire (Ivory Coast), the regions of Crimea, Donetsk or Luhansk, Cuba, Democratic Republic of Congo, Ecuador, Iran, Iraq, Liberia, Libya, Magnitsky, Mali, Morocco, Nepal, North Korea, Somalia, Sudan, Syria, Venezuela, Yemen, Zimbabwe or any other country to which the United States, the United Kingdom, Canada or the European Union embargoes goods or imposes similar sanctions; (B) a jurisdiction subject to heightened sanctions risks identified or enforced by certain countries, governments, or international authorities; or (C) a jurisdiction otherwise considered high risk with respect to the Airdrop or otherwise (collectively, "**Prohibited Jurisdictions**"). You agree and understand that the Prohibited Jurisdictions are subject to change at our sole discretion without notice.

## 3. USER INTERFACE DISCLAIMER

(a) There is only one website for Airdrops, which is the following: https://trade.bluefin.io/airdrop.

(b) Use of the website for participation in the Airdrop and claiming Tokens thereunder is at the Participant's sole risk. The Services are provided on an "as is" and "as available" basis. Bluefin expressly disclaims all warranties of any kind, whether express, implied, or statutory, including the implied warranties of merchantability, fitness for a particular purpose, title, and non-infringement.

(c) Bluefin makes no warranty that the Airdrop or the Services will meet your requirements or be uninterrupted, timely, secure, or error-free. Bluefin makes no warranty that the results that may be obtained from access to or the use of Services will be accurate or reliable or that the quality of any products, services, applications, information, or other material purchased or obtained by you through the Services will meet your expectations.

(d) By accessing and using the Airdrop or the Services, you represent and warrant that you (i) understand the risks inherently associated with using cryptographic and blockchain-based systems and (ii) have a working knowledge of the usage, storage, and intricacies of digital assets, such as the Tokens. You further represent that you understand that markets for digital assets are highly volatile due to various factors, including adoption, speculation, technology, security, and regulation. You acknowledge and accept that the cost and speed of transacting with cryptographic and blockchain-based systems are variable and may increase or decrease dramatically at any time. You acknowledge and accept the risk that your digital assets may have no value or lose some or all of their value during the Airdrop Period, any Token lock-up period, or after. You understand that anyone can create a token, including fake versions of existing tokens and tokens that falsely claim to represent certain projects, entities, or people, and you acknowledge and accept the risk that you or others may mistakenly seek to claim or trade those or other tokens. You acknowledge that Bluefin is not responsible for any of these variables or risks and cannot be held liable for any resulting losses that you experience, including losses while accessing or using the Airdrop or the Services. Accordingly, you understand and agree to assume full responsibility for all the risks of accessing and using the Airdrop and the Services.

(e) You expressly understand and agree that Bluefin will not be liable for any indirect, incidental, special, consequential, exemplary damages, or damages for loss of profits, including damages for loss of goodwill, use, or data or other intangible losses (even if Bluefin has been advised of the possibility of such damages), whether based on contract, tort, negligence, strict liability, or otherwise, resulting from: (i) the use or the inability to use the Airdrop or the Services; (ii) the cost of procurement of substitute goods and services resulting from any goods, data, information, or services purchased or obtained or messages received or transactions entered into through or from the Airdrop or the Services; (iii) unauthorized access to or alteration of your transmissions or data; (iv) statements or conduct of any third party on the Services; (v) interruption or cessation of function related to our interface or website; (vi) bugs, viruses, trojan horses, or the like that may be transmitted to or through the interface or website; (vii) errors or omissions in, or loss or damage incurred as a result of the use of,



## 4. NO PROFESSIONAL ADVICE AND NO FIDUCIARY DUTIES

(a) All information provided on the website or through the Airdrop or the Services, or otherwise provided by Bluefin, is for informational purposes only and is not and should not be construed as professional advice. You should not take, or refrain from taking, any action based on any information contained on the website or obtained through the Airdrop or the Services. Before you make any financial, legal, tax, or other decisions with respect to the Airdrop or the Services, you should seek independent, professional advice from an individual who is licensed and qualified in the area for which such advice would be appropriate.

(b) These Airdrop Terms are not intended to, and do not, create or impose any fiduciary duties on us. To the fullest extent permitted by law, you acknowledge and agree that we owe no fiduciary duties or liabilities to you or any other party, and that to the extent any such duties or liabilities may exist at law or in equity, those duties and liabilities are hereby irrevocably disclaimed, waived, and eliminated. You further agree that the only duties and obligations that we owe you are those set out expressly in these Airdrop Terms.

## 5. SEVERABILITY

If any term, clause, or provision of these Airdrop Terms is held to be illegal, invalid, void, or unenforceable (in whole or in part), then such term, clause, or provision shall be severable from the Airdrop Terms without affecting the validity or enforceability of any remaining part of that term, clause, or provision, or any other term, clause, or provision in the Airdrop Terms, which will otherwise remain in full force and effect. Any invalid or unenforceable provisions will be interpreted to affect the intent of the original provisions. If such construction is not possible, the invalid or unenforceable provision will be severed from the Airdrop Terms, but the rest of the Airdrop Terms will remain in full force and effect.

## 6. ENTIRE AGREEMENT

These Airdrop Terms and the General Terms contain the entire agreement between you and Bluefin regarding the Airdrop and supersede all prior and contemporaneous understandings between the parties regarding the Airdrop. We may modify these Airdrop Terms from time to time in which case we will update the "Last Updated" date at the top of these Airdrop Terms. The updated Airdrop Terms will be effective as of the time of posting, or such later date as may be specified in the updated Airdrop Terms. Your continued access or participation in the Airdrop after the modifications have become effective will be deemed your acceptance of the modified Airdrop Terms.

## 7. RISK FACTORS

(a) Claiming, using, transacting in, holding, and/or purchasing or selling the Token involves a high degree of risk, including unforeseen risks that may not be included below. You should consult with your legal, tax, and financial advisors and carefully consider the risks and uncertainties described below, together with all of the other information in these Airdrop Terms, before deciding whether to claim, use, transact in, hold, purchase, or sell the token. If any of the following risks were to occur, the Token or Protocol could be materially and adversely affected.

(b) There is only one website for Airdrop claims, which is the following: https://trade.bluefin.io/airdrop. Do not trust any other website regardless of its source or origin or any link routing you to a different website.

**(c) Risks Relating to the Protocol**

communications or will be maintained and further developed according to current plans. There can be no assurance that you will be able to utilize the Tokens or the Protocol in any particular way.

(ii) Risks Relating to Smart Contracts and Programs. The Protocol is generally comprised of a number of smart contracts. Smart contracts and programs are computer codes that can be created and run by the users of the network on which such smart contract or program is based. A smart contract or program can take information as an input, process that information through the pre-determined rules and conditions defined in the computer code, and execute certain actions, such as Token transactions, pursuant to such programming. The use of smart contracts and programs creates substantial risk exposures. Smart contracts are self-executing once deployed, generally without reliance on a central party, and use experimental cryptography. Smart-contract risks include the following, which may affect adoption, continued use, or functioning of the Protocol and thereby your ability to use Tokens:

(A) Flawed or Imprecise Code: Smart contract code may be imprecise or flawed. In such cases, smart contracts could have specifications or conditions that are implemented or executed in ways that are not expected. You may be at risk of losing all or a substantial portion of your digital assets through an adverse event relating to such code. Smart contracts could contain vulnerabilities or bugs that could be exploited, potentially resulting in a complete or substantial loss of your digital assets. Malicious actors could exploit such vulnerabilities or bugs to cause the execution of erroneous or unexpected slashing conditions or theft of your staked digital assets.

(B) Lack of Remediation: If imprecise or flawed code is discovered in a deployed smart contract, it may not be susceptible to identification and remediation may be difficult or ineffective. In some cases, the only practical remediation may include deploying a new smart contract or incorporating updating mechanisms that may be disruptive, risky, complex, costly, time consuming, and/or unable to reverse adverse scenarios, including complete or substantial loss of your staked digital assets.

(C) Flaws in Programming Languages: The use of programming languages in smart contracts poses risks, including vulnerabilities arising from language complexity, potential bugs and flaws in language designs or compilers, limitations in functionality or performance impacting implementation, and a lack of maturity and sustained support for certain languages impacting the reliability and security of the developed contracts. Even widely used programming languages may have compiler bugs or other flaws that, if discovered and exploit

(E) Irrevocable Token Transactions: The use of a distributed ledger and blockchain technology creates a public record of Token balances that is exceedingly difficult to change once it reflects a particular state. This means that if a Token transaction were executed in error or because of fraud or theft, such a transaction would not be practically reversible. Consequently, Bluefin will be unable to replace missing or misappropriated Tokens or seek or provide reimbursement for any such erroneous transfer, fraud, or theft. The inability to reverse transactions or seek other forms of redress for such action, error, fraud, or theft could result in the permanent loss of some or all your Tokens. This lack of redress could cause reputational harm to, and diminish participation on, the Protocol and/or adversely affect the viability or performance of the Protocol.

(F) Lack of Control over Protocol and Upgrades: The Protocol is envisioned to be an open-source project with Protocol governance collectively controlled by a community of users ("Protocol Users"). However, Bluefin has control of certain multi-signature wallets relating to the Protocol at this time, and its control of those wallets can enable certain upgrades and transactions. Under current plans, and over time, Bluefin will not have control over these wallets and the Protocol and it will not be able to control the actions of Protocol Users. This means that although Bluefin has engaged in substantial research and development with respect to the Protocol and its governance and security features, any future changes to the Protocol may need to be voluntarily adopted by Protocol Users, including, as applicable, Protocol Users

current plans, and over time, Bluefin will not be able to prevent Protocol Users or others from mismanaging code, ensure that there is an adequate or timely response to emergencies or other identified risks, or adopt necessary code or governance changes. Protocol Users or others may make decisions or take actions (or fail to make decisions or take actions) in ways that adversely affect you, Protocol Users, and/or the Protocol. In addition, the Protocol may not run or function as intended, when deployed to mainnet or after upgrades or changes, and in such cases, you and Bluefin may have limited recourse. Any of these could result in substantial or total losses of your staked digital assets and/or uses of Tokens.

Furthermore, various technology solutions are and will be incorporated into the Protocol. Some or all these technology solutions are relatively new and/or untested. There is significant risk to building and implementing new technologies that may have never been used or that are being used in different ways. There is no guarantee that such technologies will operate as intended or as described in any marketing or other materials distributed by the Bluefin or others or will continue to function according to current plans.

(iii) *Insufficient Interest in the Protocol and Token*. The Protocol relies on active engagement by users to function. Bluefin makes no assurance that the Protocol will generate enough interest and user engagement to be viable or continue to be viable. It is not possible at this time to evaluate whether sufficient users will participate in the Protocol and whether those users will sustainably and sufficiently engage with and use the Protocol for the Protocol to function as intended. Protocol Users could mismanage, misuse, or misappropriate aspects of the Protocol or Tokens in a manner that is detrimental to you, the Protocol, and the broader community of users.

(iv) Risks of Adverse Contagion from Network Events. The Protocol is comprised of a set of smart contracts deployed on Sui. This presents certain risks, including:

(A) Discovery of Virtual Machine Flaws. A Sui Move Virtual Machine ("MoveVM") bug discovered and exploited by malicious actors could present risks to the integrity and security of the Protocol because its smart contracts are deployed on Sui. MoveVM compromises could impair expected execution of the Protocol, resulting in security vulnerabilities, data corruption that changes or obscures true data states, disruptions to operations such as withdrawals, and ultimately, substantial or total losses of digital assets, fees, or support or adoption of Sui-based projects. This could diminish the use of Tokens and result in substantial or total losses of digital assets and confidence across the crypto markets more generally.

(B) Sui Hard Fork. In the event of a hard fork on Sui, changes could be made to Sui that could make the Protocol's smart contracts incompatible, dysfunctional, uneconomic, or more costly, which could impair the execution and interaction of smart contracts essential to the operation of the Protocol. Such changes also could adversely affect the ability or incentives of users to use the Protocol. A hard fork on Sui could necessitate significant changes to the Protocol that, in turn, change the economics or technical processes of the Protocol and maintaining user and developer interest. Certain types of changes in consensus rules or technical implementations could present significant or even existential risks to the Protocol. Significant resources and time could be required for the Protocol to remain compatible with one or more forks of Sui or consensus rule changes. Such resources or time may be unavailable or uneconomic to provide and cannot be guaranteed to ensure continued operation of the Protocol.

(C) Insufficient Quantum Resistance. Quantum computers, if sufficiently powerful and available for use, potentially could be used to break the cryptographic algorithms used by Sui, the Protocol, and other platforms. This could make it possible to derive private keys from public keys, opening the door to a variety of storage and other attacks that could harm Sui itself, holders of Tokens, and users building or transacting on the Protocol. This, in turn, could adversely affect adoption of the Protocol and ultimately, your ability to use the Tokens.

(v) *Multiple Other Significant Risks*. It is possible that, due to any number of reasons, including but not limited to, lack of interest from users or partners, inability to attract sustained third-party or community contributors to

 

challenges, and macroeconomic and crypto-market-specific factors, the Protocol may no longer be viable to operate and it may be deprecated or cease to have any functionality, users, or viability.

**(d) Risks Relating to the Token**

(i) *Risks Relating to the Token in Particular*. Significant market and economic factors may adversely affect your ability to use the Tokens:

A <u>No Market for the Token</u>. There is no public market for the Token, and the Bluefin does not control the development of such a market. A public market may not develop or be sustainable, and you may not be able to sell your Tokens. Furthermore, Bluefin cannot control how Token holders or third-party exchanges or platforms may support the Token, if at all. Even if a public market for the Token develops, such a market may be relatively new and subject to little or no regulatory oversight, making it more susceptible to fraud or manipulation.

B <u>Illiquidity</u>. Even if a public market does eventually exist, you may not be able to freely sell or transfer your Tokens. If you can freely sell your tokens in a public market after some period of time, the depth and volume in that market may be insufficient for you to sell without substantial price concessions.

C <u>Inflation</u>. Due to the nature and operation of blockchain protocols, the total amount of circulating Tokens could increase through the adoption of a new patch or upgrade of the source code. An increase in the quantity of Tokens, or inflation, could adversely impact you as a holder of Tokens.

D <u>Adverse Activities in Secondary Markets</u>. Secondary market activities that are beyond the control of Bluefin could develop that are adverse to your ability to use Tokens. Even with significant transfer restrictions intended to support long-term alignment with the Bluefin community, significant concentrations in Tokens positions are present and may continue to be present among a relatively small group of Tokens holders, or worsen, exposing you to significant risks of volatility, herd trading, "dumping," or other correlated secondary market activities. These risks will be considerable following expiration of the lock-up period applicable to certain Token holders, including Bluefin service providers. In addition, Protocol users may determine to approve grants, allocations, and/or inflationary mints of Tokens, all of which may be fully or partially outside of Bluefin's control and could incentivize harmful short-term trading activities or otherwise adversely affect you.

E <u>Experimental Features and Uses</u>. Tokens may be upgradeable to have experimental features and uses. Future features and uses may prove not to be valuable, usable, or viable, and contributors may fail to adequately research and develop any such upgrades. Under current plans, and over time, Bluefin may not have the ability to effectuate upgrades to implement new features and use cases. Such upgrades may not be approved in Protocol governance or may be adopted with security flaws or with unexpected or harmful changes that are adverse to your ability to use your Tokens.

(ii) *Risks Relating to Governance*. Bluefin has control of certain multi-signature wallets that can enable certain upgrades and transactions. However, any upgrades in the future may involve code changes that, under current plans, and over time, will be controlled by Protocol users. Thus, Bluefin may not have control over smart contract upgrades or administrative actions necessary to execute those upgrades, under current plans, and over time, nor will it be able to control the decisions and actions of Protocol users. This means that any future upgrades to the Token smart contract will need to be voluntarily adopted by Protocol users, including, as applicable, Protocol users participating in governance as token-holders and/or as signatories for multi-signature wallets operated by the community. Because Bluefin will lack control over community governance, under current plans, and over time, it will have limited means to prevent Protocol users from mismanaging smart contract code, ensure that there is an adequate or timely response to emergencies or other identified risks, or adopt necessary code or governance changes. Protocol users may make decisions or take actions (or fail to make decisions or take

of the Token supply.

**(e) Risks Related to Legal and Regulatory**

(i) *Risks of Tokens or Token Transactions Being Deemed Securities*. The U.S. Securities and Exchange Commission ("SEC") and its staff have taken the position that certain tokens and/or certain transactions involving tokens fall within the definition of a "security" under federal securities laws. The legal test for determining whether any given token or transaction is a security is a highly complex, fact-driven analysis that evolves with U.S. case law and developments over time, and the outcome(s) or conclusion(s) of any such legal analysis may be uncertain or evolve in ways that are difficult to predict. The SEC generally does not provide advance guidance on or confirmation of whether any token or transaction is or may be a security. Furthermore, the SEC's views in this area have evolved over time and it is difficult to predict the direction or timing of any continuing evolution. It is also possible that legislative or judicial developments or a change in the governing administration or the appointment of new SEC commissioners could substantially impact the views of the SEC and its staff. Further, certain tokens or transactions may be deemed to be other types of regulated financial instruments or transactions in the U.S. or securities or other regulated financial instruments or transactions in other jurisdictions. As a result, certain tokens or transactions may be deemed to be "securities" or other regulated financial instruments or transactions under the laws of some jurisdictions but not others. Various foreign jurisdictions may, in the future, adopt additional laws, regulations, or directives that affect the characterization of certain tokens or transactions as "securities" or other regulated financial instruments. The classification of a token or transaction as a security or regulated financial instrument under applicable law has wide-ranging implications for the regulatory obligations that could be imparted on Bluefin, Protocol, Protocol users, or holders of Tokens, including obligations that could make the Protocol not viable to continue to operate or negatively impact the development, growth, and utilization of the Protocol and liquidity and market sentiment around Tokens.

(ii) *Risks of New and Evolving Laws and Regulations*. There is significant risk surrounding the ongoing development of regulatory frameworks governing blockchain technology all over the world, including in the United States, and as the blockchain, crypto, and web3 industry continues to grow, Bluefin expects regulatory scrutiny to increase across jurisdictions. Bluefin, the Protocol or Tokens may be found to be subject to certain laws or regulatory regimes that could adversely impact you, the Protocol, or Tokens. Additionally, laws or interpretations may change and Bluefin or the Protocol or Tokens may be subject to new or changed laws or regulations in the future. Any restrictive or prohibitive legislation or regulation on blockchains or digital assets could impair the adoption of the Protocol and/or the use of Tokens and adversely affect market sentiment surrounding the Protocol and/or Tokens. To the extent licenses, permits, or other authorizations are required in one or more jurisdictions in which the Protocol or any front-end or web interface that Bluefin may host, including www.bluefin.io and any subdomain ("**Application**") is deemed to operate, there is no guarantee that Bluefin or another party will be able to secure such licenses, permits, or authorizations in order for the Protocol or any Application to continue to operate. Significant changes may need to be made to the Protocol to comply with any licensing and/or registration requirements (or any other legal or regulatory requirements) in order to avoid violating applicable laws or regulations or because of the cost of such compliance. Uncertainty in how the legal and regulatory environment will develop could negatively impact the development, growth, and utilization of the Protocol and therefore the uses of Tokens.

(iii) *Risk of Third-Party Illegal Activity*. The Protocol and Token may be exploited to facilitate illegal activity including fraud, money laundering, gambling, tax evasion, sanctions evasion, and scams. If any third party uses the Protocol or Tokens to further such illegal activities, that and the legal and regulatory consequences of those activities could negatively impact the development, growth, and utilization of the Protocol. While we do not control the activities of the Protocol's users, the use of the Protocol for illegal or improper purposes could subject us, the Protocol, or Token holders to claims, individual and class action lawsuits, and government and regulatory investigations, prosecutions, enforcement actions, inquiries, or requests that could result in liability and reputational harm for us, the Protocol, and/or the Token holders. Certain activities that may be legal in one

intentionally or inadvertently violating the laws in any jurisdiction, Bluefin, the Protocol and/or you and other Token holders may be subject to governmental inquiries, enforcement actions, prosecution, or held secondarily liable for aiding or facilitating such activities in researching and developing, or deploying, software that enabled such activities, being a platform on which such activities occurred, contributing to governance that authorized such activities, or being a member of a decentralized autonomous organization or other group that otherwise has liability with respect to such activities.

(iv) *Risk of Sanctions Violations*. Bluefin, the Protocol, or Token holders could be deemed to be violating or facilitating the violation of applicable economic and trade sanctions and export control laws and regulations, such as those administered and enforced by OFAC, the U.S. Department of State, the U.S. Department of Commerce, the UN Security Council, and other relevant authorities. Such laws and regulations prohibit or restrict certain operations, investments, services, and sales activities, including dealings with certain countries or territories (e.g., sanctioned countries), and governments, and persons (including sanctioned entities). Although Bluefin does not enter into contracts or agreements with sanctioned entities or persons located in sanctioned countries, it may not be able to entirely prevent such persons from seeking to interact with the Protocol, Tokens, and/or Token holders, including by circumventing Bluefin's controls. Abuses of the Protocol and failures or alleged failures to comply with such laws and regulations may expose the Protocol, Protocol Users, Bluefin, and/or Token holders to reputational harm as well as significant penalties, including criminal fines, imprisonment, civil fines, disgorgement of profits, injunctions and debarment from government contracts, as well as other remedial measures, and could negatively impact the development, growth, and utilization of the Protocol and market sentiment around Tokens.

(v) *Risks Associated with the Tax Treatment of Digital Assets*. Due to the new and evolving nature of digital assets and the absence of comprehensive legal guidance with respect to digital asset transactions, the taxation of digital assets is uncertain, and it is unclear what guidance may be issued in the future on the treatment of digital asset transactions for tax purposes. Guidance under, or changes in, the tax laws applicable to of digital assets, including Tokens, or Bluefin and/or its activities and transactions, either directly or through subsidiaries, could adversely impact the value of Tokens or your ability to use or engage in certain types of transactions with Tokens. Bluefin or its subsidiaries may also have tax reporting obligations in various jurisdictions with respect to Tokens claimed under the Airdrop. You should consult a tax advisor with respect to the tax treatment of Tokens in your jurisdiction.

(vi) *Risk of Entering into a General Partnership*. It could be alleged that by holding Tokens or using Tokens to vote on governance proposals in relation to the Protocol, the holders of Tokens have entered into a general partnership, unincorporated association, or some other form of legal entity or association with other Token holders or a group of such holders. At least one court in the United States has found that certain holders of a governance token constituted an unincorporated association. If this were to be found or alleged with respect to the Protocol, holders of Tokens could be held responsible for the actions of the other members of the unincorporated association or general partnership, or the Protocol itself, and subject to up to unlimited liability with respect to those actions. Additionally, such an allegation could negatively impact market sentiment around the Protocol or the Token and discourage participation in the Protocol or utilization of Tokens.

**(f) Operational Risks**

(i) *Risks of Security Weaknesses or Attacks*. Cyberattacks and security breaches of an Application or the Protocol or Tokens, or those impacting the Protocol's users or third parties such as decentralized applications or crypto wallets that interact with the Protocol or Tokens, could cause you to lose Tokens, or adversely impact the Protocol or Tokens. The Protocol could be vulnerable in a variety of ways, including but not limited to, malware attacks, denial of service attacks, consensus-based attacks, Sybil attacks, smurfing and spoofing, governance attacks, exploitable code, or any number of other currently known or novel methods of exploit. Additionally, as mentioned above, upgrades or changes to the Protocol or Tokens, which may be proposed, coded, and/or implemented by parties other than Bluefin, could introduce new vulnerabilities to the Protocol or Tokens or

reversed, so any vulnerabilities that may arise can have significant adverse effects to the Protocol, Tokens, and holders of Tokens. Further, any actual or perceived breach or cybersecurity attack directed at crypto companies or blockchain networks, whether or not the Protocol is directly impacted, could lead to a general loss of user confidence in the crypto-economy or in the use of blockchain technology to conduct transactions, which could negatively impact the Protocol, including the market perception of the effectiveness of security measures and technology infrastructure. Digital assets are generally controllable only by the possessor of a unique public and private key pair. To the extent your private key for your wallet is lost, destroyed, or otherwise compromised and no backup of the private key is accessible, you will be unable to access the tokens held in such wallet. Any Tokens that are custodied, managed, escrowed or supported by a third party may be subject to a security breach, cyberattack, or other malicious activity, or otherwise lost or stolen. Such an event could severely impact you and your Token holdings and your ability to use Tokens.

(ii) *Risk of Decentralized Operations.* Coordinating operations and implementation of feature updates, new product launches, or community initiatives amongst a distributed community can result in inefficiencies and delays. Such inefficiencies and delays could create stagnation around new developments and improvements to the Protocol and could allow more centralized competitors to act more efficiently and outcompete the Protocol, resulting in decreased usage or negative sentiment around the Protocol and Tokens. Conversely, Bluefin's role as a contributor to research and development involving the Protocol and Tokens presents certain risks, given the lack of operating history of Bluefin, the relative inexperience of certain service providers, and the novel nature of the Protocol and potential use cases for Tokens. In addition, there will be certain multi-signature wallets that have certain transactional authorities and controls related to the Protocol and Tokens, and these may include, but are not limited to, the ability to pause certain functionality of the Protocol, implement or influence upgrades and implement certain other controls or changes to functionality. At this time, certain of these multi-signature wallets may be controlled by us or certain contributors or Protocol users engaged by us, and certain other wallets may be controlled partially or entirely by committee members that are unaffiliated third parties over which the Bluefin has no or limited control. Bluefin intends, under current plans, and over time, to turn all multi-signature wallets over to the community, to parties that are independent of Bluefin. Those parties may choose to act in ways that could cause risk or damage to the Protocol or the uses of Tokens.

(iii) *Fraudulent Websites..* Some users have been targeted and/or have reported fraudulent websites, emails, text messages, and social media handles, often including embedded or published links, impersonating projects, persons, entities, or service providers of or associated with Bluefin for the purpose of defrauding users, stealing their digital assets, or otherwise unlawfully profiting from such activities. These fraud and theft risks may materialize in connection with claiming Token under the Airdrop, and you should remain extremely cautious about websites, emails, text messages, and social media handles, as well as any embedded or published links, that direct you to websites or to take actions, especially connecting to your Wallet.**There is only one website for claiming Tokens under the Aidrop, which is the following:** https://trade.bluefin.io/airdrop**. Do not trust any other website regardless of its source or origin or any link routing you to a different website.**

(iv) *Competition Risks.* The Protocol and the Token compete against a variety of existing products and platforms as well as likely new entrants into the market. Some of these current or future competing protocols and products may be subject to different regulatory regimes than Bluefin, the Protocol, or Tokens that may facilitate broader or faster adoption such that they can outcompete the Protocol. Alternatively, other competitors may exercise different amounts of control over the protocol they design that allow for faster or broader adoption. Additionally, competitors may develop more successful protocols, applications, or tokens for a variety of other reasons, including but not limited to designing a more friendly user experience, offering more compelling incentives, attracting more developers and users to the protocol, creating a more sustainable token economic design, or taking a more permissive view of applicable law.

(v) *Unanticipated Risks.* Cryptographic tokens and blockchain-based protocols are new and untested technologies. Tokens, as well as the Protocol and its design concepts, smart-contract mechanisms, algorithms, codes, and other technical details and parameters may be updated and changed. In addition to these risks,



materialize as unanticipated variations or combinations of the risks discussed. Further, new risks may be created as the Protocol and Tokens are developed (including by parties other than us) or third parties integrate Tokens or the Protocol into their products. No person, including Bluefin has an ability or obligation to keep users informed of details related to development of the Protocol or Tokens. Lack of available information may create risk for you.

How to Contact Us. You may contact us regarding the Services or these Terms by e-mail at hi@bluefin.io.

Important Disclosures:

i) **The platform is not available to United States residents**

ii) All assets on Bluefin involve a degree of risk and may result in partial or total loss of your investment

iii) Sub-second settlement does not incorporate network latency or congestion

Bluefin is an orderbook-based derivatives exchange using the most innovative decentralized infrastructure to support first-time users and professional traders. Please view our terms of use, privacy policy and airdrop terms and conditions before accessing the platform.

# We're building the world's most technologically robust derivatives exchange.

## Join Discord ›

| Quick Links | Learn More | Explore | Policies | Social |
|---|---|---|---|---|
| Home | Docs | Careers | Privacy Policy | Twitter |
| Exchange | Blog | GitHub | Terms of Use | Discord |
| API | | Brand Assets | Vulnerability Disclosure | Telegram |

Bluefin.io                                                                                                    To the top

# EXHIBIT B



300 WEST VINE STREET, SUITE 1700
LEXINGTON, KY 40507-1818
TELEPHONE: 859-899-8700
FACSIMILE: 844-670-6009
http://www.dickinsonwright.com

BRIAN M. JOHNSON
BJohnson@dickinsonwright.com
859-899-8704

March 31, 2025

Stephen D. Palley
Hayden A. Miller
Brown Rudnick LLP
601 13th St. NW, #600
Washington, D.C.  20005

Re:   Anti Capital/Bluefin Labs

Dear Mssrs. Palley and Miller:

We write in response to Mr. Miller's e-mail of March 4 regarding Anti Capital's intention to file an arbitration pursuant to its May 18, 2023 Services Agreement ("Services Agreement") with Bluefin Labs.

As noted in Mr. Palley's letter of January 16, Anti Capital and Bluefin Labs entered into a Mutual Modification Agreement effective May 24, 2024 ("MMA").  As stated in the MMA, the Services Agreement expired (*see* second WHEREAS clause), and the parties' May 9, 2023 Loan Agreement ("Loan Agreement") and the MMA are the only agreements between the parties (*see* Section 2.3).  The only agreement containing a JAMS arbitration provision is the Services Agreement.  As that agreement has expired, and as Anti Capital's claims are not based on the Services Agreement in any event, the arbitration provision upon which you are relying is ineffective.

Instead, Section 6.3 of the Loan Agreement contains a forum selection provision requiring any disputes to be resolved through the courts of the British Virgin Islands.  Additionally, the Terms of Use of the Bluefin Labs platform provide that any disputes regarding BLUE tokens must be resolved through arbitration before the British Virgin Islands International Arbitration Centre ("BVI IAC") (*see* Section 17) and will be governed by the laws of the British Virgin Islands (*see* Section 16).  Accordingly, Anti Capital does not have a proper basis for initiating a JAMS arbitration in the United States.

Moreover, the claims Anti Capital has asserted through the January 16 letter have no nexus with the United States in any event.  Anti Capital (Upper Cayman) is a Cayman Islands company with its primary mailing address in Taiwan (*see* Loan Agreement), while Anti Capital Asia Ltd. is a Taiwan company.  Bluefin Labs is a British Virgin Islands company, and Bluefin Labs does not

DICKINSON WRIGHT PLLC

March 31, 2025
Page 2

make its platform available to citizens of the United States.  In fact, the Terms of Use state at the outset:

> OUR SERVICES ARE NOT OFFERED TO PERSONS OR
> ENTITIES WHO RESIDE IN, ARE CITIZENS OF, ARE
> LOCATED IN, ARE INCORPORATED IN, OR HAVE A
> REGISTERED OFFICE IN THE UNITED STATES . . .

Bluefin Labs would not be subject personal jurisdiction in the courts of the United States, and it likewise cannot be subjected to a JAMS arbitration in the United States.

In the event Anti Capital wishes to proceed with arbitration before the BVI IAC in accordance with the Terms of Use, please send any such filing to Jonathan Ip.

Sincerely,

*Brian M. Johnson*

Brian M. Johnson

BMJ:sc

cc:    Jonathan Ip

4919-7128-7820 v1 [63901-1]

ARIZONA   CALIFORNIA   FLORIDA   ILLINOIS   KENTUCKY   MICHIGAN   NEVADA   OHIO   TENNESSEE   TEXAS   WASHINGTON DC   TORONTO