# EXHIBIT P

**JAMS COMPREHENSIVE ARBITRATION RULES AND PROCEDURES**

**In the Matter of an Arbitration Between**

**ANTI CAPITAL (UPPER CAYMAN) and
ANTI CAPITAL ASIA LTD.,**

      **Claimant(s),**

**and**

**BLUEFIN LABS INC.**

      **Respondent.**

### BLUEFIN'S MOTION FOR LEAVE TO FILE DISPOSITIVE MOTION

Respondent, Bluefin Labs, Inc. ("Bluefin"), by counsel and pursuant to the Arbitrator's Updated Scheduling and Procedural Order (Order 9), requests leave to file a dispositive motion against Claimants, Anti Capital (Upper Cayman) and Anti Capital Asia, Ltd.

### INTRODUCTION

Based on incomplete and misconstrued documentation, Claimants were previously able to convince the Arbitrator that this matter should not be dismissed at the outset because it was unclear whether the arbitration provision contained in the May 18, 2023 Services Agreement ("Services Agreement") was binding and enforceable. By Order dated July 17, 2025 (Order 3), the Arbitrator denied Bluefin's motion to dismiss for lack of jurisdiction. In doing so, the "Arbitrator retain[ed] discretion to revisit these matters if the evidentiary record so warrants . . ." *See* Order 3, pp. 28-29. Now that the parties have had an opportunity to conduct discovery, it is even more apparent JAMS lacks jurisdiction.

1

**ARGUMENT**

**I.    SUMMARY OF UNDISPUTED FACTS SUPPORTING LEAVE TO ARGUE WHY JAMS DOES NOT HAVE JURISDICTION OVER BLUEFIN**

It is undisputed that the only agreement the parties ever signed that provided for JAMS arbitration is the Services Agreement. As the parties explicitly recognized and agreed in their May 24, 2024 Mutual Modification Agreement ("MMA"), however: (1) the Services Agreement expired; and (2) the only agreements between the parties are the MMA and a May 9, 2023 Loan Agreement ("Loan").  In other words, the contract upon which Claimants rely for filing this arbitration was not only terminated, but the parties also expressly disclaimed that it continued to govern their relationship.  In opposing Bluefin's motion to dismiss, Claimants previously represented that the parties modified the structure of the Services Agreement through written communications such that it continues to govern this dispute.  The parties subsequently produced all of their communications relating to the claims in this case, and none of those communications suggests that the parties intended to revive the Services Agreement and, more specifically, that they even considered reviving the arbitration provision.  For these reasons, Bluefin should not continue to subjected to the time and expense of this arbitration.

**A.    CONSISTENT WITH THE PLAIN TERMS OF THE MMA, THE PARTIES DID NOT "REVIVE" THE SERVICES AGREEMENT AFTER IT EXPIRED.**

Had the parties truly intended for any of the terms of the Services Agreement to survive beyond the MMA, they would have separately memorialized the continuing existence of those terms or simply incorporated them into the MMA.  Not only did they not do so, they specifically agreed to remove a provision from an earlier draft of the MMA that stated it modified the Services Agreement, with the final, executed version of the MMA instead stating the Services Agreement had expired.  Maxim Shen, the representative of Anti Capital who led the negotiations with Bluefin, acknowledged the earlier draft was exchanged and discussed with Bluefin.  The executed

2

version of the MMA, however, plainly states the Services Agreement is no longer in effect and that all prior or contemporaneous discussions, understandings and agreements had been superseded.  In other words, there was a conscious decision made by both parties to disclaim the continued governance of the Services Agreement, as demonstrated by: (1) terms that were rejected from prior versions of the MMA; and (2) terms that were included in the final, executed version of the MMA.  Thus, there is no question that the MMA and the Loan Agreement are the only contracts that govern the parties' relationship. Because neither agreement provides for JAMS arbitration, this dispute must finally be dismissed.

**B.    THE PARTIES DID NOT REVIVE OR RENEW THE ARBITRATION PROVISION AFTER THE SERVICES AGREEMENT EXPIRED.**

Even if the Services Agreement had somehow been revived and/or modified, as Claimants previously argued, the Services Agreement's arbitration provision was nonetheless terminated by virtue of the MMA's integration clause and the parties' express agreement that the Services Agreement had expired.  The only way Claimants could establish that jurisdiction in this forum is proper would be by producing evidence that the parties subsequently entered into a new, written arbitration provision providing as such. *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729 (Del. Ch. 2023) ("[w]hen a prior agreement and a subsequent agreement cover the same subject matter and the subsequent agreement contains an integration clause, the prior agreement need[s] to be memorialized in [the subsequent agreement] to survive.").  Even if Claimants could establish that the general terms of the Services Agreement were revived (and they cannot), they would still need to demonstrate that the *arbitration provision* was revived through a subsequent, written agreement. *Roberts Irrigation Co., Inc. v. Hortau Corp.*, No. 2016 WL 3440623 (W.D. Wis. June 20, 2016) (under the Federal Arbitration Act, "agreements to arbitrate must be in writing" and "whatever the terms of [a] new, post-expiration agreement" might have been, there was no "no evidence that

3

those terms–including any post-expiration agreement to arbitrate–ever were written down.”); *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 307 F.3d 601, 602 (7th Cir. 2002) (after the written agreement to arbitrate expired, “[s]ome kind of agreement governed the relationship but there is no evidence that part of that agreement was a promise to arbitrate any disputes” and “there was no **subsequent** written agreement governing the parties' relationship that contained an arbitration clause.”) (emphasis added).

Claimants continue to hope the Arbitrator will imply a new agreement to arbitrate exists by virtue of the parties' continued course of dealing after the expiration of the Services Agreement. The foregoing decisions, however, make clear that when an arbitration provision is contained in an “expired contract,” the parties must execute a separate arbitration agreement and/or specifically renew the expired arbitration provision in writing because an arbitration clause is considered to be a “mini-contract, separate and severable from the overarching contract.” *Fairstead Cap. Mgmt. LLC*, 288 A.3d at 747 (citing David Horton, *The Federal Arbitration Act and Testamentary Instruments*, 90 N.C.L. Rev. 1027, 1055 (2012) (“[T]he separability rule transforms arbitration clauses into their own freestanding mini-contracts within larger container contracts.”)). Here, discovery has established there is *zero* correspondence evidencing the parties intended to create a new, separate arbitration provision. There are *zero* documents evidencing the parties intended to create a new, separate arbitration provision. And, there is *zero* testimony evidencing the parties intended to create a new, separate arbitration provision. In the absence of such evidence, this arbitration must be dismissed.

## CONCLUSION

The undisputed facts of this case demonstrate: (1) the parties did not modify the Services Agreement after it expired, but instead entered into an entirely new contract; and (2) the parties

never intended to, nor did they, revise the expired and superseded arbitration provision contained in the Services Agreement.  In the absence of a valid, written agreement to arbitrate as required by the Federal Arbitration Act, Claimants cannot properly pursue their claims through this proceeding.  Accordingly, Bluefin respectfully requests leave to file a dispositive motion challenging JAMS's jurisdiction over this dispute.

Respectfully submitted,

*/s/ Brian M. Johnson*
Brian M. Johnson
Logan J. Mayfield
DICKINSON WRIGHT PLLC
300 West Vine Street, Suite 1700
Lexington, Kentucky 40507
Telephone: (859) 899-8704
Facsimile:  (844) 670-6009
bjohnson@dickinsonwright.com
lmayfield@dickinsonwright.com
COUNSEL FOR RESPONDENT,
BLUEFIN LABS INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January, 2026, the foregoing was served on all counsel through the JAMS filing system.

*/s/ Brian M. Johnson*
COUNSEL FOR RESPONDENT,
BLUEFIN LABS INC.

4926-1173-4153 v2 [113761-2]

5