# EXHIBIT Q

**brown**rudnick

HAYDEN A. MILLER
direct dial:+1.212.209.4826
hmiller@brownrudnick.com

January 26, 2026

> **Re:    Anti Capital's Opposition To Respondent's Motion for Reconsideration**

Dear Arbitrator Peter Kamminga:

Claimants Anti Capital Asia Ltd. and Anti Capital (Upper Cayman) (collectively, "Anti Capital" or "Claimants") submit the following letter in opposition to Respondent BlueFin Labs Inc.'s ("BlueFin" or "Respondent") request for leave to file a Motion for Reconsideration.  (File No. 1525583 (the "Motion for Reconsideration").)  After several rounds of expensive briefing, oral argument, and a reasoned opinion, the Arbitrator determined that this case was appropriately arbitrable before JAMS.   (*See* File Nos. 1193149, 1209691, 1219420, 1224046, 1278965, 1286321, 1291656, 1291659, 1292686, 1295954, 1303378.)  BlueFin does not raise any new basis to seek reconsideration of the Arbitrator's Reasoned Opinion.  Instead, BlueFin suggests the Arbitrator was somehow duped.  (Motion for Reconsideration at 1 ("Based on incomplete and misconstrued documentation, Claimants were previously able to convince the Arbitrator that this matter should not be dismissed").)  To the contrary, the  Arbitrator rendered his reasoned opinion on a robust record after requesting, receiving, and evaluating significant documentary evidence.  (*See* File No. 1303378 ("Opinion"); *see also* File No. 1286321 (providing evidentiary record supporting Opinion).)  As set forth below, BlueFin has not met its burden to seek reconsideration of the Arbitrator's ruling, does not raise any new (undisputed) facts in favor of reconsideration, has consented to JAMS jurisdiction by filing its own counterclaim, and would materially undermine the purpose of JAMS arbitration by being able to relitigate an issue that has already been decided.

The Motion for Reconsideration is not only meritless but represents an attempt to avoid the consequences of its own admissions in this Arbitration.  Only days before BlueFin filed its Motion, its founder, Mr. Rabeel Jawaid, admitted to liability for most of the disputed tokens at issue in this arbitration.  If BlueFin cannot escape the arbitration, there will be no dispute that it is liable for millions of dollars in damages.  For the foregoing reason, BlueFin's request for leave to file a Motion for Reconsideration should be denied.

**Arbitrator's Reasoned Opinion**:   In his 29-page Motion to Dismiss Opinion, the Arbitrator addressed each of the arguments that BlueFin raises in its request for reconsideration. It held that:  (1) "an integration clause may be overridden by mutual conduct that materially alters or continues the parties obligations"; (2) the parties' "communications and ongoing performance following execution of the MMA show that both parties continues to act in accordance with the modified Services Agreement"; and (3) "the integration clause in the MMA must be read narrowly and does not bar the conclusion that the Services Agreement, including its arbitration clause, remained operative through mutual conduct and governed the parties' commercial relationship during the relevant period."  (Opinion at 22.)  The Arbitrator drew this conclusion after reviewing numerous communications that were submitted to the Arbitrator at his specific request, so that he could rule on a robust record.  (*See* File No. 1286321.)

**BlueFin Does Not Carry Its Burden For Reconsideration**:  The Arbitrator previously noted that he "retains discretion to revisit these matters if the evidentiary record so warrants." (Opinion at 28-29.)  This was not an invitation for BlueFin to repeatedly raise the same (rejected)

January 26, 2026
Page 2

arguments. JAMS Rules do not expressly authorize a motion for reconsideration. Pursuant to federal law, motions for reconsideration should only be granted "sparingly." *See Karr v. Castle*, 768 F. Supp. 1087, 1090 (D. Del 1991). Moreover, reconsideration can only be authorized "if the court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension." *Intellectual Ventures I LLC v. Check Point Software Tech. Ltd.*, 215 F.Supp.3d 314, 321 (D. Del. 2014) (citing Shering Corp. v. Amgen, Inc., 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990); *Above the Belt, Inc v. Mel Bonhannan Roofing, Inc.*, 99 F.R.D. 101 (E.D. Va. 1983)). No such error was made here. Given JAMS mandate for the efficient resolution of disputes, it would be bizarre if Respondent were held to a lower standard for seeking reconsideration and could drive up the cost of the dispute without raising any new fact or legal authority justifying duplicative motion practice.

**Each of The Arguments Raised By Respondent Have Already Been Addressed**: While Respondent suggests its request for reconsideration may be based on new arguments or evidence, each of its bases for relief were addressed on a substantial record as evidenced in the chart below.

| Respondent's Basis for Relief | Opinion | Supporting Authority |
|---|---|---|
| The MMA superseded the Services Agreement because the "MMA . . . . stat[ed] the Services Agreement had expired." (Motion for Reconsideration at 2-3.) | "[T]he presence of an integration clause in the Services agreement does not preclude a finding that the agreement remained in effect, particularly where both parties continued to perform under its terms and referred to it in subsequent written communications." (Opinion at 19.) | Communications postdating the MMA showing the continuing services relationship between BlueFin and Anti Capital. (*See, e.g.*, File ID 1291656 at Screenshot 17 through 21.) |
| Parties did not "revive" the Services Agreement after it expired. (Motion for Reconsideration at 2-4.) | "[T]he parties continued performing for over 18 months after the expiration of the original 90-day term of the Services Agreement. Communications submitted by Claimants show that BlueFin not only accepted continued services, but affirmatively directed and benefited from Anti Capital's market-making activity, including volume generation, bot deployment, and capital contributions, often referencing compensation via token rewards or performance milestones." (Opinion at 16-17.) | Numerous messages between the parties between 2023 and 2025 indicating continuing services being provided by Anti Capital. (*See* File ID 1291656 at Screenshots 3 through 21.) |

**Lack of Any Newly Discovered Facts or New Legal Authority**: BlueFin notes that discovery has recently been completed but does not reasonably contend that discovery resulted in the production of new information. Instead, BlueFin continues to fight the Arbitrator's Opinion on the same grounds it did before. BlueFin claims that there is no support for the modification of the Services Agreement based on the parties' communications. (Motion for Reconsideration at 2 ("[N]one of [the parties'] communications suggest that the parties' even considered reviving the [Services Agreement].")). This position is facially untenable. Anti Capital already submitted numerous communications to the Arbitrator in opposition to the Motion to Dismiss showing that BlueFin repeatedly asked Anti Capital to provide trading services over the course of 2 years and

January 26, 2026
Page 3

offered to modify the duration and payment structure of the Services Agreement.  (*See* File Id. 1286321.)  The Arbitrator invited BlueFin to introduce documentary evidence to the contrary.  (*See* File Id. 1278965.)  It did not then, and does not now, point to anything that alters those clear communications.  (*See* File Id. 1295954.)

Nor does BlueFin argue that the law changed since the Arbitrator rendered its Opinion.  Instead, BlueFin cites to older caselaw from the Western District of Wisconsin and the Seventh Circuit to interpret a contract governed by Delaware law.  (Motion for Reconsideration at 3-4.)  These cases are non-binding, inapposite, distinguishable, and could have been raised months ago when BlueFin made its first attempt at dismissal.

**Motion For Reconsideration Undermines JAMS Policy And Is Made In Bad Faith**:  JAMS Rules clearly contemplate efficient dispute resolution.  "JAMS is committed to providing the most efficient, cost effective arbitration process that is possible in the particular circumstances of each case."  (JAMS Recommended Arbitration Discovery Protocols for Domestic Commercial Cases, at Introduction.)  Contrary to these principles, BlueFin seeks to relitigate the arbitrability of this dispute without raising any new facts that would justify reconsideration.  This is especially offensive because: (1) BlueFin has filed its own counterclaim (tacitly accepting the jurisdiction of JAMS) and thereby driven up Anti Capital's costs defending against those counterclaims (*see* File No. 1331783); and (2) BlueFin's founder admitted to (partial) liability during a recent deposition (*see* File No. 1526260).

\*        \*        \*

For the above-stated reasons, the Arbitrator should deny BlueFin's request for leave to file a Motion for Reconsideration.

Respectfully yours,

**BROWN RUDNICK LLP**

Hayden A. Miller